# OCTOBER, 1945

T. A. BINFORD ET AL V. MRS. LILLIE VIOLET SNYDER ER VIR.

No. A-475. Decided June 27, 1945.
Rehearing overruled Ocober 3, 1945.
(189 S. W., 2d Series, 471.)

136

*Lewis & Knipp,* and *Ernest Knipp,* of Houston, for T. A. Binford, *Luther Hudson,* of Fort Worth, and *L. Edward Mooney,* of Houston, for the Traweeks, petitioners.

The Court of Civil Appeals erred in setting aside and holding void the deed of May 4, 1935, executed by Mrs. Snyder and E. C. Carnes to T. A. Binford, conveying the same land which she had previously conveyed to other parties, whose title had been acquired by Binford, and which Binford described in his answer and cross-action. Eylar v. Eylar, 60 Texas 315; Deaton v. Rush, 252 S. W. 1025; Parker v. Newberry, 83 Texas 428, 18 S. W. 815; Ramirez v. Bell, 298 S. W. 92; 25 Tex. Jur., 481.

On the question of Limitation—Slaughter v. Qualls, 139 Texas 340, 162 S. W. (2d) 671.

*E. H. Suhr, Bryan, Suhr & Bering, Richard H. Burks,* all of Houston, for respondent.

Cranes held the land in trust for Mrs. Snyder, and in taking a deed from Cranes with that knowledge, Traweek became a trustee for Mrs. Snyder. And by accepting a deed for Traweek, with knowledge, Binford also became a trustee for her, and therefore they could not divest her of her equitable title by asking her to sign a deed, without disclosing to her a full and complete statement of all the facts relating to the disposition of her land by Carnes. Hall v. Miller, 147 S. W. (2d) 266; Cawthorne v. Cochell, 121 S. W. (2d) 414; Hughes v. Hughes, 191 S. W. 742; 42 Tex. Jur. 729; 65 C. J. 777.

MR. JUDGE SLATTON, of the Commission of Appeals, delivered the opinion for the Court.

The judgment of the trial court granted a recovery of title and possession to Mrs. Snyder for 112.98 acres of land and denied a recovery to her of 89.23 acres, all the land being situ-

ated in Harris County. The judgment of the Court of Civil Appeals affirmed the trial court's judgment with respect to the 112.98 acres, and on account of an admission filed in the Court of Civil Appeals by Mrs. Snyder, affirmed the trial court's judgment with respect to a 20.84 acre tract of the 89.23 acre tract, and reversed the judgment of the trial court with respect to the remaining 68.39 acre tract, and rendered judgment in favor of Mrs. Snyder for the title and possession of said land. 184 S. W. (2d) 684.

T. A. Binford and Mrs. Zoie Traweek sought and obtained writs of error. The trial court submitted special issues to the jury embracing the controversy as between Mrs. Snyder and the Traweeks, and as between Mrs. Snyder and Binford as to the two tracts aggregating 89.23 acres. All issues submitted to the jury were answered favorably to Mrs. Snyder. However, the trial court granted Binford's motion for judgment notwithstanding the verdict. The first important question to determine is, did Mrs. Snyder own the equitable title to the land in suit? It indisputably appears that Mrs. Snyder, through the assistance of E. C. Carnes, recovered judgment for title and possession of all the land in suit prior to her deeds of conveyance to E. C. Carnes. According to evidence contained in the record, and found by the jury to be true, the lands claimed by Binford and the Traweeks were conveyed by Mrs. Snyder to E. C. Carnes for the purpose of Carnes' selling the land for $26,000.00 cash. Carnes testified that Mrs. Snyder "deeded the property over to me in trust. * * * She gave it to me in trust to sell for her for $26,000.00." Under such an arrangement it is believed no beneficial interest in the lands passed from Mrs. Snyder to Carnes. The legal title passed to Carnes and the beneficial interest or equitable title remained in Mrs. Snyder. It indisputably appears that no consideration was paid by Carnes to Mrs. Snyder for the land. It may be inaccurate to designate the agreement between Carnes and Mrs. Snyder as an express trust; however, it appears that shortly after the death of her first husband Mrs. Snyder was aided in procuring the title and possession to her real estate by Carnes, and that he was given 20.84 acres of land, apparently in payment for his assistance. It seems that Mrs. Snyder trusted Carnes and had complete confidence in him. She was not related to him. Therefore, when she conveyed her property to him without consideration and there being no blood relationship existing between them, no intention of making a gift appears. A trust resulted to Mrs. Snyder, and whether the trust be an express or an implied one is immaterial, for the reason that in either class the equitable title to the property is in the actual owner and the legal title is in the trustee.

We conclude, therefore, that as Mrs. Snyder and E. C. Carnes the equitable fee in the land sought to be recovered in this suit is in Mrs. Snyder.

■ The jury found that Traweek and Binford purchased the land with knowledge (1) that Mrs. Snyder had an interest in the land; (2) that Carnes held the land for the purpose of sale only for cash. If the jury findings are true, and they were found to be well supported by the evidence by the Honorable Court of Civil Appeals, the purchase of the property by Traweek from Carnes, who was Mrs. Snyder's trustee, was fraudulent as to Mrs. Snyder. Traweek, under such circumstances, becomes also a trustee for Mrs. Snyder. The rule applicable to Traweek is thus stated in Ruling Case Law, Vol. 26, p. 1236:

"It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

■ The conveyance of the land by Carnes to Traweek did not terminate the trust. The American Law Institute Restatement of the Law of Trusts, Vol. 2, 1059, Sec. 342 (i), reads as follows:

"If the trustee transfers the trust property to a third person with the consent of the beneficiary, but the consent of the beneficiary was procured by fraud or other improper means, the trust will not be terminated."

■ The above-stated principle is applicable both to the Traweeks and Binford, because the jury found, as we have before stated, that they bought with knowledge of Mrs. Snyder's owning an interest in the land and that Carnes held the land for sale only for cash. The applicable rule as to them is well stated in Pomeroy's Equity Jurisprudence, (5th Ed.) Vol. 4, pp. 102-104, Sec. 1048, which reads as follows:

"Whenever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer (see s747), or which is a purchaser

with actual or constructive notice of the trust (see s753), then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquired and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a bona fide purchaser for a valuable consideration and without notice. This universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust; it enables them to follow trust property,— lands, chattels, funds of securities, and even of money,—as long as it can be identified, into the hands of all subsequent holders who are not in the position of bona fide purchasers for value and without notice; it furnishes all those distinctly equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law."

To the same effect, see Perry on Trusts, (7th Ed.) Vol. 1, pp. 379-381, Sec. 217. The rule has been many times applied in this state. See Mansfield v. Wardlow, 91 S. W. 859, loc. cit. 863, (writ denied) ; Alexander v. Harris, 254 S. W. 146, (writ refused).

■ Having determined that under the facts of this case Mrs. Snyder owned the equitable title to the land in suit, the next question is, can she recover such title in an action of trespass to try title under a statutory formal pleading, without specially pleading her equitable title? There seems to be confusion in the authorities on this question. It is believed the confusion is more apparent than real. In the early case of Easterling v. Blythe, 7 Texas 210, loc. cit. 214, it was held:

"* * * in respect to personal property, the action may be maintained by the party in whom subsists the real ownership, irrespective of the question of whether his title be one of legal or equitable cognizance. And no reason is perceived why the same principle is not equally applicable to real property."

It was pointed out in that case that the court had previously

determined "that an equitable title may be interposed by a defendant, to prevent a recovery, in an action of trespass to try title," citing the case of Neill v. Keese, 5 Texas 23, and the court further declared: "* * * and we see no reason why a plaintiff may not recover upon such title." Martin v. Parker, 26 Texas 253; Hill v. Moore, 62 Texas 610; Morris v. Rhine, 8 S. W. 315, loc. cit. 317; Wade v. Boyd, 60 S. W. 360, writ refused; Low v. Gray, 130 S. W. 270, 272, writ refused; Mason v. Bender, 97 S. W. 715; Tompkins v. Broocks, 43 S. W. 70; Betzer v, Goff, 80 S. W. 671; Texas Creosoting Co. v. Hartburg Lumber Co., 16 S. W. (2d) 257, and many others. The confusion exists either through cases wherein the titles have been specially pleaded or in cases where equitable rights have been asserted as distinguished from an equitable title. See Groesbeck v. Crow, 85 Texas 200, 20 S. W. 490, which case belongs to the latter class, and it is deemed unnecessary to cite case where either the titles or the equitable rights have been specially pleaded. On the authorities cited, we hold that Mrs. Snyder can recover an equitable title under the ordinary formal averments contained in a statutory action of trespass to try title without the necessity of specially pleading her equitable title.

The petitioners press the argument that the effect of the judgment in this case is to cancel the deeds from Mrs. Snyder to Carnes and from Mrs. Snyder to Binford. Specifically, Binford argues that the effect of the judgment cancelled the deed executed by Mrs. Snyder to him, which was dated on the 24th day of May, 1935, after his purchase from Traweek on the 10th day of April, 1935. It is claimed that the later deed was cancelled solely because of the proof, adduced over his objection, that there was no consideration for this deed. In this regard the petitioners fail, we believe, to observe the true purpose of Mrs. Snyder's suit. She does not seek to cancel the deeds, which she says only conveyed the legal title. As a part of her evidence it was shown that she did not receive any consideration for the deeds, but such proof was adduced in connection with other evidence to the effect that a trust existed in the property. Indeed, it is doubted whether the equitable title would have remained in her had she received a consideration for the execution and delivery of the deeds. When she adduced proof of the true agreement, which showed her to be the owner of the beneficial interest in the property, and that Traweek and Binford bought with notice thereof, it is believed that a superior equitable title existed in her. It is not Mrs. Snyder's contention that her conveyance to Carnes is void or voidable. She sought only to show that the deed conveyed the legal title and the equitable title remained in her. As the evidence she adduced on the trial shows a su-

perior equitable title, the judgment in a suit of trespass to try title under the statute gives her the title and possession of the land.

It may be conceded "that a consideration is not necessary to the validity of a deed," as has been held in the case of Baker v. Westcott, 73 Texas 129, 11 S. W. 157, and many other cases which might be cited. But the proof in this case of a trust relationship between Mrs. Snyder and Carnes negatives the payment of a consideration, as stated in the deeds from Mrs. Snyder to Carnes. In regard to the nominal consideration recited in the deed from Mrs. Snyder to Binford, which was executed after Binford's purchase from Traweek, it was ruled in Lanier v. Faust & Douglass, 81 Texas 186, 16 S. W. 994:

"It was not error to permit the defendant Douglass to show that although the deed from Faust to himself recited a consideration of $100.00, no money was in fact paid, and that the purpose was merely to reinvest the defendant Douglass with the title to land. The recital of the consideration in a deed is placed upon the footing of a receipt, and like other receipts, is capable of being explained or contradicted by parol evidence."

A notable exception is recognized to the above rule stated, where the consideration recited in the deed is contractual in nature. Kahn v. Kahn, 94 Texas 114, 58 S. W. 825; McKivett v. McKivett, 123 Texas 298, 70 S. W. (2d) 694.

It is equally well settled that a trust may be engrafted on a deed by parol evidence. Faville v. Robinson, 111 Texas 48, 227 S. W. 938.

It is argued that before Mrs. Snyder can recover the land she must first cancel the deeds above mentioned, citing such cases as Deaton v. Rush, 113 Texas 376, 252 S. W. 1025. It is pointed out in the Rush case that a deed obtained by fraud is not void, but voidable only. In such a case, before the vendor who has been defrauded can recover the land, it is necessary to assert the equitable right of cancellation of the deed before a recovery of the land may be obtained. In the present case Mrs. Snyder cannot recover the land in suit without impressing a trust upon the deed which she gave to Carnes and as against the vendees of Carnes she cannot recover the land without showing that the vendees of Carnes purchased with notice of her rights in the land. Certainly she does not desire to cancel deeds upon which she seeks to impress a trust.

The record shows without dispute that Binford purchased

from Traweek on the 10th day of April, 1935. The jury found, as we have stated, that he purchased with knowledge of the trust. What is the effect of the subsequent deed, designated as a quitclaim deed in the record, but according to our view the deed is a conveyance, under authority of Benton Land Company v. Jopling, 300 S. W. 28. This question probably posed the determinative question to the trial court in deciding Binford's motion for judgment notwithstanding the verdict.

According to the evidence with respect to this deed, Carnes testified as follows:

"Q. Mr. Carnes, state whether or not you obtained a quitclaim deed signed by yourself and Mrs. Wunsche, now Mrs. Snyder.
"A. Did I obtain one?

"Q. Did you have Mrs. Snyder sign such?
"A. Yes, we both signed that.

"Q. Now what, if anything, did you do with that quitclaim deed?
"A. I wish to state one more thing on that, I remember I signed it, I can't say she signed it, too. I don't know whether she signed it or not.

"Q. What did you do with the quitclaim deed, if anything?
"A. To the best of my knowledge I gave it to Mr. Graham.

"Q. To the best of your knowledge you gave it to Mr. Graham.
"A. Yes, sir, that has been a long time.

"Q. Did you or not authorize Mr. Graham to deliver that quitclaim deed?
"A. Naturally, if I give it to Mr. Graham, I would have authorized him to deliver it to the right parties upon receipt of the money; as I say now, I don't remember whether I did or not.

"Q. Upon receipt of the money that would have been his authorization to deliver it, is that true?
"A. Yes, sir, certainly.

"Q. Mr. Carnes, state whether or not, if you know, that the quitclaim deed I just questioned you about, state if you know what was done with the quitclaim deed after it was delivered to Mr. Graham?
"A. I will say this, I know it was delivered, because I happened to see it myself, in the record myself, the record here.

"Q. Was that or not, delivered with your authority?
"A. It was not.

"Q. It was not?

"A. No. sir.

"Q. Upon delivery of that deed, the quitclaim deed, to your attorney, Mr. Graham, did you or not receive any money or consideration of any kind for that?

"A. I have never received money or consideration of any kind for any of the property. I don't know whether Mr. Graham delivered that deed or not. I don't remember how that happened."

The deed was procured by Carnes after he entered into a contract with Binford to sell the land, which Binford purchased for a stipulated price, wherein Binford promised to pay Carnes ten per cent commission for negotiating the sale. Mrs. Snyder testified tht she was asked to sign a paper. She did not know that it was a deed, and did not acknowledge it. Binford testified:

"Q. And the quitclaim deed was for what purpose, did you say? Do you know?

"A. Do I know?

"Q. Yes.

"A. I think the attorneys had investigated the title and found some·flaws, and that is what it was, to help him (Carnes) make the sale, *it was not mine, it was his.*

"Q. You mean by that, Carnes?

"A. He was the one trying to make the sale; in order to make the sale, he had to get that straightened out.

"Q. So Carnes was acting for himself in that, too, then?

"A. Yes, sir." (Our italics).

There was no issue submitted or requested to be submitted concerning this deed. Under the evidence quoted, it appears to us that Binford cannot claim title to the property in virtue of this deed because it indisputably appears that the deed was never delivered to Binford with the intent on the part of the grantors (Mrs. Snyder and Carnes) that the same should become effective as a conveyance. According to Carnes, it was delivered to Graham for the purpose of delivery, conditioned on the payment of the consideration. None was ever paid. Binford says "It was not mine, it was his," meaning Carnes. In the leading case of Steffian v. The Milmo National Bank, 69 Texas 513, 6. S. W. 825, it is said:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To

complete a delivery in its legal sense two elements are also essential. The instrument must not only be placed within the control of grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance.

"It follows from these first principles that an instrument which passes into the possession of the grantee without such intention on the part of the grantor, is wholly inoperative, and that a purchaser from the former acquires in law no title to the property which it purports to convey. It is accordingly held, that even a vendee from the grantee, who has paid value without knowledge of the facts, is not an innocent purchaser in such a case. (Citing authorities) * * * The courts say that a deed delivered without the consent of the grantor is of no more effect to pass title than if it were a forgery."

The deed not being delivered to Binford with the consent of the grantors, no title passed to Binford. Even though this deed be void, where the grantors through gross neglect permitted the same to be used in such manner as to cause one to believe the deed to be genuine, and in reliance on the authenticity thereof acted to his detriment, the doctrine of equitable estoppel has application. But, according to the findings of the jury that Binford had notice at the time of his purchase from Traweek, the subsequent deed, which was made several days after his purchase, could not, under the evidence, have misled Binford to his prejudice. Therefore, the doctrine of equitable estoppel has no application.

■ Having concluded that the title of Mrs. Snyder is an equitable one, sufficient to support an action of trespass to try title, it follows that the four year statute of limitation is not applicable. Stafford v. Stafford, 96 Texas 106, 70 S. W. 75; Carl v. Settegast, 237 S. W. 238, 241.

Traweek and Binford contend that the evidence does not raise the issues which were submitted to the jury with respect to the notice of the interest in the land belonging to Mrs. Snyder and of the trust impressed upon the land. We have carefully studied the record and conclude that the evidence raised the issues which were submitted to the jury and answered by the jury adversely to Traweek and Binford. The Honorable Court of Civil Appeals deemed the evidence amply sufficient. No useful purpose can be served by quoting the evidence. It is sufficient to say that Carnes and Mrs. Snyder testified with respect to the trust, and Carnes testified that he had a number of con-

versations with Traweek and Binford concerning the various conveyances which were executed by the parties. Binford, when asked if he remembered the conversations, would neither affirm nor deny them. Traweek testified that he knew Mrs. Snyder and an interest in the land and further admitted that she was on the land when he went to look at it and that he thereafter allowed her to live in his property in the city of Houston some four years without any payment of rent.

Binford contends that the intermediate court erred in holding that Mrs. Snyder was not estopped to assert title to the land claimed by Binford, since she testified that she knew that Carnes had sold the land and had accepted gold mine stock. Specifically, Binford and Traweek both contend that Mrs. Snyder testified positively and unequivocally that she knew at or about the time the Traweeks purchased all of the land that they had given Carnes gold mining stock therefor and she had, by her failure to act for so many years, acquiesced therein. We have carefully studied the evidence of Mrs. Snyder, and while there are many contradictions, we are not prepared to say that under her testimony it appears as a matter of law that she ratified or acquiesced in the acceptance by Carnes of gold mining stock for her land, which she authorized him to sell only for cash. Rather, we think, under her evidence, it was for the jury to determine, and the trial court properly submitted the questions to the jury which were by the jury answered adversely to Traweek and Binford. Moreover, the jury found, in effect that Mrs. Snyder's words, acts and conduct were not such as to lead Binford to believe she was not claiming an interest in the land before he paid his money to Traweek.

■ There is no merit to Binford's contention that the trial court abused its discretion in refusing to allow the case to be reopened and permit the introduction of two additional witnesses who would have testified as to the possession of Binford under his plea of the three-year statute of limitation.

The right of a party after having rested his case to reopen it and introduce additional evidence is a question addressed to the sound discretion of the trial court.

There is no showing of an abuse of discretion in the present case, for the reason that the title exhibited by Binford does not support a title as required under the three-year statute. Vernon's Annotated Civil Statutes, Art. 5508; Burnham v. Hardy Oil Co. 108 Texas 555, 195 S. W. 1139; St. Louis Union Trust Co. v. Harbaugh, 205 S. W. 496, (writ refused).

Traweek, through a supplemental argument, contends that under the statute (Vernon's Annotated Civil Statutes, Art. 7425b) which was passed in 1943, the rust proven in this case being in parol and the trial being had after the statute became effective, is ineffectual even though the trust was in existence before the passing of the trust act. We overrule the contention on the authority of Hutchings v. Slemons, 141 Texas 448, 174 S. W. (2d) 487. The case relied on by Traweek shows the distinction by the use of the following language:

"The legislature might change, modify, abolish and establish remedies for existing rights, where the remedy was not entirely taken away or unreasonably encumbered." To apply the statute in this case would, in our opinion, effectually destroy Mrs. Snyder's equitable title.

It follows from what we have said that in our opinion, the judgment of the Court of Civil Appeals is correct and should be affirmed. It is so ordered.

Opinion adopted by the Supreme Court June 27, 1945.

Rehearing overruled October 3, 1945.