Emmett CADMUS et al., Appellants

v.

R. O. EVANS et al., Appellees.

No. 15452.

Court of Civil Appeals of Texas.

Dallas.

Nov. 21, 1958.

Rehearing Denied Jan. 30, 1959.

Irwin & Irwin, George W. Irwin, Dallas, for appellants.

Eades & Eades, Eric Eades and Eric Eades, Jr., Dallas, for appellees.

CRAMER, Justice.

Emmett Cadmus and wife, Georgia Mae Cadmus, individually and as next friend for Cora Jane Cadmus, a minor, filed this action against R. O. Evans, E. E. Kelly and wife, Jane Kelly, to recover title to Lot #23, Block 5/5691, Greenway Crest, an addition to the City of Dallas, asserting that on April 15, 1951 the parties entered into an agreement that the Kellys would take the title to the property involved in trust for Georgia Mae McGee (now Cadmus) and Cora Jane McGee, and the down payment was made with funds furnished by, and then owned by, Georgia Mae McGee and Cora Jane McGee, and prayed that Georgia Mae, and Cora Jane McGee, be decreed to

be the owners of such property. R. O. Evans and wife were made parties. Cadmus, et al. alleged that in 1953 the Kellys had executed and delivered a deed to such property to Evans, but that such deed was really a mortgage to secure a personal debt due Evans by Emmett Cadmus. The prayer was that the deed be decreed to be a mortgage. Evans and wife filed an amended cross-action against all parties, in trespass to try title, and in the alternative, for foreclosure of a second vendor's lien note alleged to be superior to the rights of all parties, and a second alternative count alleging that Evans paid ad valorem taxes, first lien note payments to Dallas Federal Saving and Loan Ass'n, insurance premiums and second vendor's lien note to one Sheffield. Cross-plaintiffs, the Evans, asserted subrogation rights under such liens and for foreclosure of such subrogation liens.

Cora Jane McGee answered alleging Evans and all other parties stood in the position of Trustees, constructive or resulting, as to her rights and interests in the property.

E. E. Kelly and wife filed general denial.

Trial was to the Judge without a jury who found the facts in amended findings as follows: (1) The property involved is Lot 23, Block 5/5691 Greenway Crest, an addition to the City of Dallas, and known as Glenwick Lane Property; (2) L. B. Sheffield is the common source of title, thereto; (3) L. B. Sheffield conveyed said property by general warranty deed dated April 16, 1951 to E. E. Kelly and wife Jane Kelly; (4) A vendor's lien to secure purchase, a note for $13,000 (payable $83 per month) in favor of Dallas Federal Saving & Loan Ass'n, was recited in such deed, the Association having advanced that sum on such purchase price, Kelly, et ux. gave two second vendor's lien notes, one for $5,500 due in 30 days and one for $1,250 payable $13.50 per month; (5) in addition to the vendor's liens, deeds of trust were executed by the Kellys; (6) the transaction was

closed on that basis on April 17, 1951; (7) except that the $2,000 cash was not paid at that time, but was paid later; (8) E. E. Kelly is the same person as Elmer E. Kelly, and he and Jane Kelly are the father and mother of Georgia Mae McGee (now Cadmus); (9) Georgia Mae McGee is the mother of Cora Jane McGee a minor, now 15 years of age; (10) that E. E. Kelly and wife never actually paid any part of the purchase price for said Glenwick Lane Property from their funds; (11) E. E. Kelly and wife took title on April 17, 1951 as an accommodation to their daughter, Georgia Mae McGee, with oral understanding that title was being held in trust for her and Cora Jane McGee, and E. E. Kellys have never made claim to any interest in said property; (12) Georgia Mae McGee was formerly married to Jasper A. McGee, who died intestate in Dallas County on March 21, 1947; Jasper A. McGee left surviving him his widow, Georgia Mae McGee and one child Cora Jane McGee, now 15 years of age, who are his sole heirs at law and no administration was ever had on his estate and none is necessary; (13) Jasper A. and Georgia Mae McGee, at the time of Jasper A. McGee's death, owned as community property Lot 9, Block F/2174, Greenland Hills Addition, known as the Ridgedale Street Property, subject to purchase money mortgage; (14) after the death of Jasper A. McGee, Georgia Mae McGee filed in the probate Court of Dallas County application to be appointed community survivor, but she never gave bond or qualified as such; (15) no legal guardian of person or estate of Cora Jane McGee has even been appointed; (16) On April 27, 1951 Georgia Mae Kelly McGee, individually and as community survivor of the community estate of her and Jasper A. McGee conveyed the Ridgedale Street property to one Clyde S. Heard, Hexter Title Company handled the transaction, and it was closed April 27, 1951.. The sale price was $12,750 and the liens and other charges due by seller were $4,082.31, leaving a balance of $8,667.69 due seller, which was paid

to Georgia Mae McGee individually and as community survivor; (17) Georgia Mae Kelly McGee gave her father E. E. Kelly $8,500 from such sale funds and on April 28, 1951 E. E. Kelly sent the Security Title Co. $7,500; $5,500 thereof was used to pay the Sheffield $5,500 note thereafter released on May 2, 1951, and $2,000, recited as cash down payment on the Glenwick Lane property, leaving $13,000 first lien and the $1,250 second lien outstanding against the Glenwick Lane Property; (18) when the Glenwick Lane Property was acquired by E. E. Kelly et ux. they knew that the money, or at least a part thereof, to be derived from the sale of the Ridgedale street property would be used in the acquisition of the Glenwick Lane Property; (19) Georgia Mae Kelly McGee married Emmett Cadmus April 28, 1951, and they, and Cora Jane McGee, lived in the Glenwick Lane Property until the filing of this suit; (20) Mary Agnes Evans, wife of R. O. Evans, is a sister of Emmett Cadmus; (21) prior to late August or early September 1953 Emmett Cadmus was indebted to R. O. Evans and wife, for loans made to him, the exact amount not established by the evidence; (22) in late August or September 1953 ad valorem taxes due the State and County were delinquent, none of the taxes having been paid since it was acquired from Sheffield; the 1951 and 1952 taxes were due the State and County, in the sum of $54.05, were delinquent; the 1951 taxes due the City of Dallas in the sum of $118.81 were delinquent, and suit to foreclose the tax lien had been filed by the City; the 1952 taxes $95.56 were also delinquent, and the property was in danger of being lost by foreclosure. Three monthly installments of $83 each were past due on the first vendor's lien note due Dallas Federal Saving & Loan Ass'n, and nothing had been paid on the $1,250 second vendor's lien note due L. B. Sheffield, and the property was in danger of being lost by foreclosure; (23) at such time E. E. Kelly et ux. were unwilling to pay or advance the money to pay such back taxes and delin-

quent vendor's lien note installments. Emmett and Georgia Mae Cadmus were in financial difficulties and unable to pay same, and not in a position to pay future installments, and Cora Jane McGee was not able to pay such payments; (24) in order to save the property from foreclosure of the prior liens, Kelly et ux. and Emmett Cadmus et ux. requested R. O. Evans et ux. to pay the back taxes and delinquent vendor's lien note payments due Dallas Federal Saving & Loan Ass'n, and the installments to become due said Association for a period of one year. Mr. & Mrs. Cadmus agreed to repay the Evans such amounts, and Mr. and Mrs. Kelly agreed to deed the Glenwick Lane property, subject to the liens, to Mr. and Mrs. Evans to secure such repayment, with the understanding that upon such repayment Evans et ux. would reconvey the property one-half to Mr. and Mrs. Cadmus and one-half to Cora Jane McGee, subject to existing liens at that time; and Mr. and Mrs. Cadmus also agreed to pay Mr. and Mrs. Evans the personal loans above mentioned; (25) Evans et ux. as a result of such request, agreed to and did, pay delinquent taxes and vendor's lien installments plus delinquent taxes of $272.92, and the tax suit was dismissed. Also paid the Loan Association delinquent installment totalling $249, and the installments due for the next twelve months in the sum of $996; (26) On September 1, 1953, as per the agreement, E. E. Kelly et ux. conveyed the Glenwick Land Property to R. O. Evans et ux. It was intended by all parties that this deed was really a mortgage and was given as security to secure Mr. and Mrs. Evans in the repayment of the said sums paid and to be repaid for taxes, insurance and vendor's lien payments as requested by Mr. and Mrs. Cadmus and Mr. and Mrs. Kelly. At such time none of the parties intended Mr. and Mrs. Evans would assume or agree to pay the entire balance of the vendor's lien note, but would pay only such delinquent payments and taxes and note payments for 12 months. It was also intended the personal loans to Cadmus would be secured by such deed; (27) at the time the September 1st, 1953 deed was delivered to R. O. Evans et ux., they were put on notice an interest in the Glenwick Lane Property was asserted for the benefit of Cora Jane McGee, but they did not intend to pay said delinquent taxes and vendor's lien payments which were encumbrances against the whole property as a gift to Cora Jane McGee, but they intended such payments to be for the protection of the entire property as requested by Mr. and Mrs. Kelly and Mr. and Mrs. Cadmus; (28) at the end of the twelve months period, during which the Evans made the vendor's lien note payments to Dallas Federal Saving & Loan Ass'n, Mr. and Mrs. Cadmus were still unable to repay Mr. and Mrs. Evans for such prior payments as they had agreed to do, and Mr. and Mrs. Kelly and Mr. and Mrs. Cadmus requested Mr. and Mrs. Evans to continue making such payments in order to prevent foreclosure, and the Evans did make additional payments to the Dallas Federal Saving & Loan Ass'n, in the sum of $2,826, insurance premiums of $16.77, and ad valorem taxes of $344.36, prior to August 9, 1956; (29) that on August 9, 1956 Mr. and Mrs. Cadmus were still unable to pay said taxes, insurance premiums and vendor's lien payments, and unable to repay the Evans for payments previously made by them, and Mr. & Mrs. Kelly were unable and unwilling to make such payments. At such time Mr. and Mrs. Evans were unwilling to continue making payments of such taxes, insurance premiums and vendor's lien installments, and requested the security, the Glenwick Land Property, be delivered to them in satisfaction of their claims for taxes, insurance premiums and vendor's lien note payments paid by them. It was the intention of the Evans that they would acquire the full title to said property. On August 9, 1956 Emmett Cadmus et ux. by general warranty deed conveyed the Glenwick Lane Property to R. O. Evans et ux.; (30) The deed of August 9, 1956, was not intended as a mortgage, but Evans et ux. intended and

thought the deed conveyed to them the full title. It was not the intention of Mr. and Mrs. Evans to accept a half interest in satisfaction of all payments made by them; (31) Mr. and Mrs. Evans allowed Mr. and Mrs. Cadmus to remain in possession under a lease for 12 months from August 10, 1956 to August 10, 1957. No actual rental was paid for such lease; (32) R. O. Evans desired to sell the Glenwick Lane Property and on August 9, 1956, offered to pay Cadmus a commission on any sale Cadmus could make in excess of $16,000 net to Evans. That Cadmus never accepted such offer nor made any sale of the property. Such offer was not intended to indicate Mr. and Mrs. Cadmus, or anyone else, had any interest in the property; (33) it was not the intention of the parties to the August 9, 1956 deed that the property was to be held in trust, or to be sold, or that the deed was given to effect any settlement of personal debts between Mr. and Mrs. Cadmus and Mr. and Mrs. Evans, or that the Evans were accepting only a one-half interest in the property in satisfaction of all payments made by them, but it was the intention of said parties that all said property would belong to the Evans, in satisfaction of their payments of taxes, insurance and vendor's lien payments; (34) after August 9, 1956, R. O. Evans and wife paid additional taxes on the property of $385.05, insurance premiums of $80.71, and first vendor's lien note payments to Dallas Federal Saving & Loan Ass'n, of $996, and second vendor's lien note indebtedness to Sheffield of $1,500; (35) R. O. Evans and wife, at request of the Kellys and Emmett Cadmus and Georgia Mae Cadmus, paid taxes, insurance premiums, Dallas Federal Saving & Loan Ass'n, and second vendor's lien payments and interest on said items in the amount of $7,384.71; (36) that the vendor's lien notes, insurance and ad valorem taxes on the Glenwick Lane Property are and were valid and subsisting indebtedness and secured by superior liens to the rights, title and interest of all parties; (37) R. O. Evans and wife have not asserted any lien or claim against the Glenwick Lane Property in this cause by reason of any personal loans to Cadmus; (38) that Cadmus and wife repaid Evans $854 plus $90.67 interest, a total of $944.67 in payments made by Evans for which he has been reimbursed; so that the net total paid by R. O. Evans and wife for taxes, insurance premiums and on vendor's lien notes is the sum of $6,440.04; (39) that by clerical error the amount recited in the judgment dated January 20, 1958, which Evans and wife paid is $6,851.60 and the lien for one-half of such amount established in their favor is stated to be $3,425.80. That R. O. Evans and wife have duly filed remittitur of $207.78 so as to correct such error so that an order of sale and other process to foreclose their lien will be for one-half of $6,440.04, or the sum of $3,220.02 against the undivided one-half interest owned by Cora Jane McGee.

Cadmus objected to finding No. 17, and requested additional findings, after which the trial court filed additional findings, as follows: 1. With reference to this court's amended fact finding No. 17, filed on February 14, 1958, the court does not find that there was a "gift" of the funds in question; that when Georgia Mae McGee sold the Ridgedale Property and later on April 28, 1951, when she gave her father said $8,500, both knew and intended that $7,500 of the Ridgedale Sale proceeds would be paid on the $5,500 second lien note and the $2,000 deferred down payment on the Glenwick Lane Property. 2. That on April 28, 1951, Georgia Mae McGee deposited the $8,667.69, which she received on April 27, 1951, from the sale of the Ridgedale property, in her personal bank account in the First National Bank, Dallas, Texas. 3. That Georgia Mae McGee delivered to E. E. Kelly her check on said account in the sum of $8,500 on April 28, 1951. 4. On April 28, 1951, E. E. Kelly sent Security Title Company $7,500 by his check on that date, and they received same on May 2, 1951 and applied said $7,500 to the payment of said $5,500 note to Sheffield,

and $2,000 for the deferred purchase price of said Glenwick Lane Property. 5. That both E. E. Kelly and Georgia Mae McGee knew that the minor, Cora Jane McGee, had an interest in the $8,500 which Georgia Mae McGee delivered to E. E. Kelly on April 28, 1951.

There were no further objections or attacks on the amended findings of fact, or the supplemental findings, therefore such findings and supplemental findings are binding on us, except where attacked in this appeal.

After the evidence was concluded the trial court entered judgment that R. O. Evans, et ux., and Cora Jane McGee recover from Emmett Cadmus et ux. and E. E. Kelly et ux., title and possession of Lot #23, Block 5/5691, Greenway Crest, an addition to the City of Dallas, and that R. O. Evans et ux. have title and possession of an undivided one-half interest in said property; and that a lien in the sum of $3,425.80, plus 6% interest per annum from January 1, 1958, be established and fixed in favor of R. O. Evans et ux. against the interest of Cora Jane McGee's one-half of said property; "said lien hereby fixed being one-half of the prior lien indebtedness paid by cross-plaintiffs; provided for process to enforce the judgment, and that after other items have been paid the balance be paid into the Registry of this Court, for the benefit of plaintiff, Cora Jane McGee." And taxed the costs against Emmett Cadmus, et ux. and E. E. Kelly, et ux.

■ Point one in substance asserts error in finding and concluding that a resulting trust arose by operation of law at the time the property was acquired, whereby the minor became one-half owner of the Glenwick Lane Property, subject to the vendor's lien; countered that in the trial court appellants contended throughout, and tried the case on the theory, that Cora Jane McGee owned an undivided one-half interest in the equitable title to the property, and the trial court held in favor on such contentions, and appellants cannot now contend in this Court that Cora Jane McGee had no such equitable title in an attempt to try the case on a different theory.

Cadmus et al. alleged: "That on or about April 15, 1951, the plaintiff Georgia Mae McGee, who was at that time a widow, entered into an agreement with the defendants E. E. Kelly and wife, Jane Kelly, in Dallas County, Texas, by the terms of which agreement the defendants E. E. Kelly agreed to purchase, and did purchase the following described real estate in Dallas County, Texas, to be held in trust for the plaintiff Georgia Mae McGee and her daughter, Cora Jane McGee, that all of the down payment for said purchase was furnished by Georgia Mae McGee, and that $7,500.00 of the down payment used was known by the parties to be money and the estate of the minor, plaintiff Cora Jane McGee. That the real estate was purchased, and defendants E. E. Kelly and Jane Kelly took title thereto, in trust for plaintiffs Georgia Mae McGee and Cora Jane McGee.

"That at all times since the purchase and acquisition of the real estate herein referred to by E. E. Kelly and Jane Kelly, the plaintiffs Georgia Mae McGee and the minor Cora Jane McGee, have lived in and had the exclusive possession of said real estate, and are now in possession thereof." And as follows: "That at the time of the execution and delivery of the deed, from defendant E. E. Kelly and wife to defendant R. O. Evans and wife, the plaintiffs were in full possession of the real estate involved, which is their home. That at no time did the plaintiffs relinquish possession nor did they move from said property; that all of the defendants knew and had full knowledge of the fact that the minor child, Cora Jane McGee, *owned an interest in said real estate* in the amount of at least $7,500.00, and that the defendant E. E. Kelly *held title in trust for said minor and* her mother, plaintiff Georgia Mae McGee, and that defendants E. E. Kelly and wife held title in trust only.

"That it was the intent of all parties that the deed from defendants E. E. Kelly and Jane Kelly to R. O. Evans though absolute on its face, was, in truth and in fact a mortgage only, executed for the purpose and with the intent to secure R. O. Evans in his debt of $700.00. That defendant R. O. Evans has not ever been in possession of said property, but has at all times recognized the exclusive ownership and right of possession of the plaintiffs; that the defendants E. E. Kelly and wife, from whom R. O. Evans received a deed, were not ever in possession of said property."

Evans filed a general denial and cross-action in form of trespass to try title and damages, answered by Cadmus, et al. by "not guilty" special answer and prayer for temporary injunction to prevent foreclosure pending suit, and denial of any relief to Cadmus. The temporary injunction was granted thereafter, on application, answer and contest. A receiver was appointed and qualified. Thereafter the judgment appealed from was entered.

The record shows that Cadmus, et al., pled facts constituting a resulting trust in favor of Georgia Mae Cadmus and Cora Jane McGee, to-wit: All the down payment for the purchase of the property was furnished by Georgia Mae McGee Cadmus, and part of such down payment money belonged to Cora Jane McGee, Cora Jane McGee through her attorney, Ad Litem, pled she had an interest in the property under a constructive or resulting trust, and the trial court so held, and entered judgment on such holding.

It is a settled rule that where a case is tried on a theory, it must be considered on the same theory in the appellate court, appellant being restricted to that theory. 3-A Tex.Jur. (Appeal & Error "generally") Sec. 136; As to Issues Sec. 137 (Rule 137); as to Pleadings, Sec. 138; as to Defense Sec. 139, pp. 168, 176; See also Rule 67.

In A. J. Rife Construction Co. v. Brans, Tex.Civ.App., 298 S.W.2d 254, 255, this court held that the parties (Syl. 8) are bound by, and restricted to the theory upon which they try their cause without objections; "parties cannot try their cases on theory which is not a proper theory and after verdict for first time raise question that trial was on wrong theory."

See also 3-B Tex.Jur. Sec. 872, p. 275. Appellant did assign error and objected as follows: "Plaintiffs object to the court's finding in No. 17 of its amended findings, that Georgia Mae McGee 'gave' her father, E. E. Kelly, $8,500.00, for the reason that there was no gift or intention of a gift in this case and that the evidence is all to the contrary; that finding No. 36 is an erroneous conclusion of law—that the rights, title and interest of R. O. Evans and wife are inferior to the rights of the minor Cora Jane McGee".

Having pled and tried the case on the theory on which the judgment was rendered, appellants cannot now complain and seek correction of such matters.

Point one is overruled, and the counter point thereto is sustained.

▮▮▮▮ Points 2, 3 and 4, briefed together, assert error of the trial court in failing to find and conclude, as a matter of law that (2) a constructive trust in favor of the minor exists upon, and constitutes a superior charge and claim upon the whole title and interest of every party to this lawsuit, to the extent of $4,333 of the minor's funds traced into the Glenwick Lane Property; (3) all parties herein hold all title and interest in the Glenwick Lane Property whether legal or equitable, as Trustees for the benefit of the minor, Cora Jane McGee, to the extent that her funds were traced into the Glenwick Lane Property; and (4) that R. O. Evans, et ux. became substitute trustees for the benefit of the minor, Cora Jane McGee, by purchasing interests in the Glenwick Lane Property with notice of the minor's interest; countered that "if a constructive trust in the property existed in favor of Cora Jane McGee, as now contended by appellants, she

had an equitable title to the property to the extent of one-half, which was the adjudication by the trial court, and such title was inferior to the taxes and vendor's liens on said property."

Cadmus and wife in their amended cross-action asserted that Evans holds legal title to the property and took such title with full knowledge of the interest of the minor Cora Jane McGee, and Georgia Mae Cadmus, and that the deed was executed for the sole purpose of securing Evans on the pre-existing debt due him by Emmett Cadmus, et ux., and intended only as a mortgage, etc. There was evidence favorable to the judgment, believed by the trial court, sufficient to support his judgment. It is settled law that an implied trust, whether resulting or constructive vests the equitable title to the property in the beneficiary and such equitable title is superior to the legal title held by the Trustee. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471. See 37 Texas Digest, Trusts p. 171. The interest of the cestui que trust under a constructive trust is an equitable *title* and not a mere equitable right. Hall v. Miller, Tex.Civ.App., 147 S.W.2d 266.

Points 2, 3 and 4 are overruled and the counter points thereto sustained.

Points 5 and 6 in substance assert error of the trial court in finding and concluding, as a matter of law; (5) "that the interest of the minor, Cora Jane McGee, are subject to subrogation rights, claims and liens in favor of R. O. Evans and wife, and in ordering foreclosure of the minor's interest." (6) "* * * that the minor, Cora Jane McGee, became the owner of an undivided one-half interest in the Glenwick Lane Real Estate, subject to the vendor's liens thereon." Countered that the trial court "* * * correctly held that the interest of Cora Jane McGee in the real property—whether it be an equitable title or right or whatever its nature—was inferior and subject to the ad valorem taxes assessed against the property and that upon payment of such superior liens by R.

O. Evans he became subrogated thereto." Appellants contended throughout, and tried the cases on the theory, that Cora Jane McGee owned an undivided one-half interest in the equitable title to the property, and the trial court held in their favor on such contentions, and appellants cannot now contend in this court that Cora Jane McGee had no such equitable title in an attempt to try the case on a different theory.

As stated under other points the cause here must be considered on the theory on which it was tried in the trial court, by the parties, and here the cause was tried on the theory that Cora Jane McGee owned an undivided one-half interest in the equitable title, and recovered on that theory a one-half interest in the equitable title.

Points 5 and 6 are overruled.

Point 7 and the counter point thereto asserts error of the court in finding and concluding that "R. O. Evans and wife, Mary Agnes, are entitled to judgment for title and possession of the Glenwick Lane Property as against all other parties to this cause." Countered that "the trial court correctly held that E. E. Kelly and wife had no title or interest in the Glenwick Lane Property."

There is no question but that this case was tried by both parties on the theory that Cora Jane McGee owned a one-half undivided interest in the equitable title to Lot 23, Block 5/5691, Greenway Crest, an addition to the City of Dallas, both under the pleadings, the evidence, and as stated above both parties are now bound by such theory.

The judgment here was correctly entered by the trial court on the theory on which it was then tried.

Point 7 is overruled.

Finding no reversible error in the trial court's judgment it is affirmed.

Affirmed.