**R. P. BATTEN, Appellant,**

v.

**J. R. BATTEN et al., Appellees.**

No. 15992.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 28, 1972.

Rehearing Denied Jan. 26, 1973.

William R. Vance, Bryan, for appellant.

Anthony Willy, Freeport, for appellee J. R. Batten.

Parten & Parten, Ben L. Parten, Jr., Franklin, for appellees Mrs. Jessie Smith and others.

Sallas, Griffith & Meriwether, Gus E. Meriwether, Crockett, for appellee Polly Bullock.

BELL, Chief Justice.

This is an appeal from a judgment declaring that R. P. Batten held a one-half interest in a 61 acre tract of land in Brazos County in trust for the heirs of Mrs.

Florence Grice Batten under a constructive trust. Actually, since R. P. Batten was an heir and there were nine brothers and sisters including himself, he would, if appellees are correct, hold 1/18th individually and 8/18ths as trustee.

R. N. Batten and wife Florence owned the 61 acre tract as community property. R. N. Batten died intestate in 1924. Surviving him were his wife and nine children, to wit: R. P., W. L., Mrs. Maude Locke, Mrs. Polly Bullock, Mrs. Jessie Smith, Mrs. Bessie Rankin, Robert, John and Joe. Joe died prior to this suit and his children succeeded to his interest.

Florence Batten died in April 1950 leaving a written will dated August 11, 1942 whereby she devised all of her interest in the land to R. P. and named him as independent executor without bond. March 17, 1952 R. P. Batten filed an application to probate the will. The will was admitted to probate March 31, 1952.

Under the foregoing facts R. P. would own a 10/18ths interest and the other children would each own a 1/18th interest.

In September 1969, R. P., W. L. and Maude filed a partition suit against the other brothers and sisters and the heirs of Joe. Mrs. Bullock filed an answer pleading non-joinder of her husband and a general denial. J. R. Batten filed a general denial. The other defendants in their amended answer alleged each living child owned a 1/9th interest and the heirs of Joe owned a 1/9th interest. The answer further alleged that R. P., in 1948, told Joe he would not claim under the will but the property would be divided equally among the nine children; that prior to death of Florence R. P. told Mrs. Smith and W. L. that he would not probate the will or claim under it but that the property would be divided equally; and that thereafter R. P. had the will admitted to probate without notice to or knowledge of the defendants. It is then alleged that since the probate of the will R. P. at various times told the defendants and W. L. and Joe that he did not

claim by virtue of the will more than 1/9th; that R. P. made like statements to Mrs. Smith and other members of his family; and that in reliance on said statements the defendants did not contest said will. The defendants then alleged R. P. had for many years managed the property for all parties and the probating of the will was for convenience only and a confidential relation existed between R. P. and the brothers and sisters.

Based on the foregoing allegations the defendants prayed for judgment establishing that R. P. held title to an undivided one-half interest in trust for himself and the other parties to the suit.

R. P. Batten denied all of the statements allegedly made by him.

Robert Batten testified that sometime in 1952 R. P. told him he didn't know anything about a will but if there was he would tear it up and the property would be divided by 9. R. P. never told him otherwise. He trusted R. P. who had managed the property. He did not talk to the other members of the family. He consulted no attorney. A few days after his conversation with R. P. he went to the courthouse and saw the will. He was willing to accept it since it was his mother's will. He trusted R. P.'s honesty. He first became aware of R. P.'s claim when citation in this case was served.

Jane Batten, widow of Joe, testified that a few months before Florence's death she heard R. P. tell Joe to forget about the will because if there was one they would divide the property by 9 just like there wasn't a will. Joe died in 1958. She first knew of R. P.'s claim when she was served with citation. Mrs. Smith told her in 1968 the will had been probated.

Mrs. Smith testified that shortly before her mother's death R. P. told her, "I understand you all are worried about the will —it is going to be torn up. I let Mother make a will but it is going to be torn up and everything divided." She found out

the will had been probated at least two years later. In 1961 and 1965 R. P. told her things would be divided equally. She didn't do anything because she trusted R. P. Sometime after March 1952 there was a discussion about contesting the will. Since R. P. had made the statements about dividing the property, they decided to drop it.

Mrs. Rankin testified that soon after her mother's death R. P. told her the will was made to him. He didn't tell her anything about probating it. After it had been probated he told her he was still going to do the right thing and divide it in nine equal shares. He told her about probating the will later. She relied on and trusted R. P. R. P. told her he probated the will as a matter of convenience.

W. L. testified that sometime in 1961 R. P. stated it was to be divided in nine equal shares and aided in surveying it into nine equal parts. He knew there was a will but thought nothing of it. He said nothing about a contest.

J. R. testified that in 1961 and 1962 he, W. L. and R. P. talked about dividing it in nine equal parts and chaining it off. He never went to see a lawyer about a contest.

Mrs. Locke and Mrs. Bullock testified in effect that they hadn't wanted to contest the will as they trusted R. P. This was after Mrs. Smith talked about contest.

H. R. Smith testified that within two years after the probate of the will, he, W. L., Joe and Robert went to see an attorney about filing a contest. Since two of the sisters objected, nothing was done.

There is evidence that Mrs. Smith, Mrs. Rankin and Mrs. Locke paid their mother's funeral expenses, hospital and doctor's bills. There is no evidence that the other children paid anything on these items.

The evidence indicates that three or four times appellant leased the property for small amounts but the record is uncertain as to whether the others shared in the rentals. Some of the witnesses testified R. P. was looking after the property for them. The record also shows R. P. paid practically all of the taxes.

The position of appellees is that they had intended to contest the will but they refrained from doing so because they relied on the representation by their brother R. P. that he would tear it up and divide the property in nine equal parts.

The position of appellant is that the facts necessary to establish a constructive trust were not established by clear, satisfactory and convincing evidence. He further asserts there was error in finding a trust because he, by statute, had an affirmative duty to probate the will, and that appellees failed to show they had any grounds for contest of the will.

We reach the conclusion that the trial court correctly held there was a constructive trust and that R. P. Batten held equitable title to an undivided $9/18$ths in the property for the use and benefit of the other brothers and sisters.

No findings of fact were made. There is a statement of facts. We must presume the trial court found every fact supported by the evidence in a manner so as to support the judgment.

■ A review of the statement of facts will support a finding that appellant knowingly represented that he would not probate the will that had left everything to him but that the property would be divided equally nine ways. Expressed otherwise that he would allow the property to pass under the laws of descent and distribution. Further, the evidence would support the finding that the appellees in reliance upon such representation, which was in effect a promise, had foregone filing any contest of the will. These findings are supported by sufficiently clear, satisfactory and convincing evidence.

Appellant relies primarily on the case of Manning v. Sammons, Tex.Civ.App., 418

S.W.2d 362 (CCA—Ft. Worth), ref., n. r. e. We deem that case not controlling. It was decided on a basis that there had been a compromise and settlement between the parties.

We have found no Texas case precisely in point. The principle is well established that where one fraudulently acquires title to property, equity will intervene by impressing a constructive trust on the property in favor of one who is truly and equitably entitled to it.

In Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, our Supreme Court stated the rule thusly:

"It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence or fiduciary relations, but in any unconscientious manner, so he cannot equitably retain the property which really belongs to another, equity carries out its theory of double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

In the case of Pope et al. v. Garrett, 147 Tex. 18, 211 S.W.2d 559, our Supreme Court held that where an heir prevented a person from executing a will leaving property to a third person, the heirs held equitable title under a constructive trust for the third party.

It is very generally held that a devisee or legatee who promises the testator to hold title, devised or bequeathed to him, for a third party, will be held a trustee under a constructive trust for such third party. The same is held where a legatee or devisee prevents a testator from making a new will by promising to hold title for another. 54 Amer.Jur. Sec. 242–243. While such cases represent dealings with a testator by the trustee, they are based on the principle that the trustee has wrongfully obtained title to property.

Here the will of Florence Batten does not pass title until it is probated. R. P. Batten promised he would not probate the will but would divide the property among the children of Florence equally. This promise was made at a time when the will could have been contested. This promise, which R. P. denies was made, induced the appellees not to contest the will. R. P. thereby wrongfully acquired title.

We have in our search found only two cases directly in point. They are Bunte v. Hasley, 122 Okl. 81, 251 P. 591 and Morris v. Leverett, Okl., 434 P.2d 912, both by the Oklahoma Supreme Court. Each held, under facts comparable to this case, that the legatee held for the heirs under a constructive trust.

The failure of the heirs to prove they had grounds for contest is immaterial. Bunte v. Hasley, supra.

Section 75 of the Probate Code, V. A.T.S., places no duty on appellant to have the will probated.

The judgment is reformed by decreeing that R. P. Batten holds title to an undivided ⁹⁄₁₈ths as trustee for appellees. As reformed the judgment is affirmed.

On Motion for Rehearing

The last paragraph of our opinion handed down December 28, 1972, is corrected so it shall read "The judgment is reformed by decreeing that R. P. Batten holds title to an undivided ⁹⁄₁₈ths as trustee for his brothers and sisters and heirs of his deceased brother Joe. As reformed the judgment is affirmed."

Appellant's motion for rehearing is overruled.