**AFFILIATED CAPITAL CORPORATION and ACRG Joint Venture, Appellants,**

v.

**COMMERCIAL FEDERAL BANK and Ryan Mortgage Company, Appellees.**

**No. 3–91–006–CV.**

Court of Appeals of Texas, Austin.

July 1, 1992.

Rehearing Overruled Aug. 12, 1992.

**522**

Mark Cohen, Austin, for appellants.

Linda J. Burgess, Hughes & Luce, Austin, for appellees.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

Affiliated Capital Corporation and ACRG Joint Venture, appellants, (hereinafter collectively "the Venture"), bring this appeal from a summary judgment in favor of Commercial Federal Bank and Ryan Mortgage Company, appellees (hereinafter referred to collectively as "the Bank"). After a dispute arose over a loan transaction, the Venture sued the Bank on claims of usury, breach of contract, breach of a duty of good faith, violation of the Deceptive Trade Practices–Consumer Protection Act (DTPA),[1] and unfair collection tactics. The district court granted two partial summary judgments in favor of the Bank, which were incorporated into a final summary judgment ordering that the Venture take nothing. We agree with the district court's actions in regard to the summary judgments and will affirm the final judgment.

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (1987 & Supp.1992).

## FACTUAL BACKGROUND

In 1983, the Venture entered into a construction loan agreement with the Bank for $6,405,000 to construct an apartment complex in Austin, Texas. This agreement also covered permanent financing on the apartment complex. The loan agreement was evidenced by a promissory note (the "Note") and secured by both a deed of trust on the property and an assignment of rents. The Note was part of a bond program established by the Austin Housing Financing Authority to facilitate the building of multi-family housing. The Authority used the proceeds of a bond sale to fund large loans to banks who would subsequently make smaller loans, under the program guidelines, to developers of multi-family projects.

In February and March of 1986, the Venture failed to make payments on the Note. After receiving a notice of possible foreclosure for default, the Venture wrote the Bank requesting to prepay the remaining balance of the loan. The Bank responded that the note did not allow prepayment prior to December 1992, and that the Bank would not waive the Note provisions because of its bond agreement with the Austin Housing Financing Authority. The Bank suggested that the Venture try to use government securities to serve as substitute collateral. From April through August, the Venture again failed to make payments under the Note. In August, the Bank accelerated the Note for default, demanding payment of the balance due and the prepayment penalty. However, by August the Venture was no longer able to prepay the balance of the loan, so the Bank foreclosed. The Venture then filed this suit against the Bank.

## NOTE PROVISIONS

Only a few of the note provisions are at issue in this case; they are set forth below for the sake of clarity. The provisions at issue concern prepayment, acceleration, interest after default, and the usury savings clause. The pertinent portions of the no-prepayment clause and prepayment-penalty provisions read as follows:

> No prepayment of the note shall be allowed prior to December 21, 1992. After such date the undersigned shall have the right to prepay, in whole or in part, the unpaid balance of principal.... In the event of any prepayment, voluntary, by acceleration or otherwise or if for any reason the full stated principal amount of this Note is not paid as scheduled to maturity, including by failure of the undersigned to request or qualify for advances, a prepayment charge calculated in the manner set forth on Exhibit "A" shall be imposed.

Exhibit "A" was a schedule of prepayment penalties listed in decreasing order. The first penalty was equated with a prepayment occurring before December 21, 1982, and the decreasing amounts of the penalty were scheduled to prepayments before each following June 1 and December 1, until December 1, 2002.

The provisions governing default, including interest on default and acceleration on default, state:

> Upon default hereunder ... at the option of the holder of this note, all amounts then unpaid under this note ... shall bear interest at the lesser of sixteen and eight tenths percent (16.8%) per annum, or the maximum rate permitted by law ... and in addition the holder may, at its option, declare immediately due and payable the entire principal sum together with all interest accrued and owing thereon, plus any other sums payable at the time of such declaration pursuant to this note, the Loan Agreement, the Deed of Trust, and any other instrument securing the note.

Finally, the usury savings clause reads:

> All agreements between the maker hereof and the holder hereof ... are expressly limited so that in no contingency or event whatsoever shall the amount paid, or agreed to be paid, to the holder hereof for the use, forbearance, or detention of the covenant or obligation contained herein, exceed the maximum amount permissible under applicable law.

## PROCEDURAL HISTORY

In response to the Venture's petition, the Bank filed a motion for partial summary judgment. The district court granted the motion with respect to the usury claim against the Bank and with respect to the duty-of-good-faith and breach-of-contract claims against Ryan Mortgage Company.[2] The district court granted the Bank's second motion as to the breach-of-contract, breach-of-duty-of-good-faith, and DTPA claims. Those judgments disposed of all issues, except a claim of unfair collection tactics which the parties non-suited, without prejudice, to allow for the entry of a final judgment incorporating the two former partial summary judgments. None of the orders specifies the basis for granting summary judgment.

## STANDARD OF REVIEW

■ A trial court should grant a motion for summary judgment only if the movant establishes by competent summary judgment evidence that there is no genuine issue of material fact to be decided and that the movant is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of demonstrating that no genuine issue of material fact exists. *Id.* A defendant moving for summary judgment is required to prove that as a matter of law the plaintiff has no cause of action, that is, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). Where the order does not give a specific basis for granting the judgment, the non-movant, on appeal, must show why each ground asserted in the motion is insufficient to support the

order. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989); *McCrea v. Cubilla Condo. Corp.*, 685 S.W.2d 755, 757 (Tex. App.1985, writ ref'd n.r.e.).

The Venture presents general points of error complaining that the district court improperly granted summary judgment in the Bank's favor. These points preserve for argument all possible grounds, presented in the response, upon which the motion should have been denied. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

## DISCUSSION AND HOLDING

### A. *Usury Claim*

Based on the Note, the Venture asserts two bases for its usury claim: 1) the Bank actually charged usurious interest; and 2) the Bank contracted for usurious interest. In appealing the summary judgment on this issue, the Venture asserts no disputed fact issues.[3] Instead, the Venture contends that the district court erred as a matter of law in granting the Bank's motion for summary judgment on this claim.

■ The Venture contends the Bank actually charged usurious interest by charging the prepayment penalty on the accelerated amount of the Note. The Venture contends that this penalty was usurious, in fact, because it can only be construed as applying to forbearance on the total accelerated amount, as a separate contract. Under this theory, had the Venture paid the amount due the day after acceleration, the penalty amount of $171,957.96 would have been viewed as one day's interest on the amount owed, which would have been unlawful.[4] Therefore, the Venture contends

2. In the Bank's first motion for partial summary judgment, Ryan asserted a separate defense of agency to the usury, breach-of-contract, and breach-of-duty-of-good-faith claims.

3. In fact, the Venture had requested summary judgment in its favor on this issue in an earlier motion. The trial court denied that request before the Bank presented its own motion.

4. According to the Venture's figures, the outstanding balance at the time of acceleration was $6,395,460.78. Under its theory, the manner for calculating legal interest for one day at 18% is as follows: $6,395,460.78 × .18 = $1,151,182.74 divided by 365 days = $3,153.93 × 1 day = $3,153.93 as legal interest. That amount is considerably less than $171,957.96 (the amount of the penalty).

that neither the spreading doctrine nor the savings clause of the original Note could be applied to this penalty.

In support of this contention the Venture cites *Crider v. San Antonio Real Estate, Building & Loan Ass'n*, 35 S.W. 1047 (Tex. 1896); *General Motors Corp. v. Uresti*, 553 S.W.2d 660 (Tex.Civ.App.1977, writ ref'd n.r.e.); and *Moore v. Sabine National Bank*, 527 S.W.2d 209 (Tex.Civ.App. 1975, writ ref'd n.r.e.). Although these cases are not directly on point, this Court finds no Texas cases dealing with similar prepayment penalties; therefore we will examine the Venture's cited cases to determine if they are persuasive.

*General Motors* involved consumer credit installment contracts and defined its terms based on article 5069–7.04 of the Texas Revised Civil Statutes and cases under the federal consumer credit guide. *General Motors*, 553 S.W.2d at 663. The case at bar is not a consumer credit case. Further, *General Motors* interpreted the availability, after acceleration, of a refund credit of time-price differential which applied only to voluntary prepayment. That case held that no voluntary prepayment could happen after acceleration. *Id.* We find the case distinguishable. Under the terms of the Note in this case, the penalty applies not only on the event of voluntary prepayment but also on any event preventing the loan from maturing as originally scheduled.

*Moore*, likewise, is distinguishable. It deals only with the concept of when a charge for unearned interest had been made. *Moore*, 527 S.W.2d at 211. Charging for unearned interest is not at issue in this case.

The next authority upon which the Venture bases its usury claim is *Crider*. That case involved a loan which was declared in default after three or more installments were past due. Pursuant to the contract, the entire remaining principal on the notes as well as the outstanding interest already due were demanded and that entire amount was charged interest at the highest lawful rate. The interest charged thus exceeded the legal rate for the outstanding principal alone. The Texas Supreme Court found that, according to the parties' contract, the continuing interest on an unpaid amount due after maturity (default triggering maturity) would be charged against a new obligation consisting of the combined outstanding interest and principal. The amount of this new obligation saved the contract from being usurious. *Crider*, 35 S.W. at 1048. Those facts likewise are distinguishable from the case at bar.

In this case, the Note applies the prepayment penalty as a one-time charge in the event of either voluntary prepayment, prepayment by acceleration, or failure to qualify for or request construction advances. Thus, the penalty is not for continuing forbearance of payment of the accelerated sum after acceleration but, rather, is designed to compensate the lender for interest that will not be earned due to the failure of the Note to go to maturity. This intent is shown not only by the language of the Note but by the fact that Exhibit "A" sets the penalty amount based on the amount of time by which the initial loan was shortened, not the amount of time during which the accelerated sum is unpaid. Indeed, the Note contains another provision, set forth above, which provides for payment of interest on the matured obligation in the event of default. The interest-on-default clause is analogous to the continuing-interest provision at issue in *Crider*.

We hold that *Crider* does not require us to characterize the prepayment penalty as interest on a new obligation created by acceleration. Instead, the terms of the Note suggest that the sum is more properly construed as a penalty to mitigate the loss of the originally contracted interest on

---

If spreading is allowed, however, the penalty amount, $171,957.96, is added to all other interest charged over the life of the loan, $3,387,-161.23, for a total of $3,559,119.19, and this total is compared to the highest legal rate the Bank could have charged over the time the loan was

outstanding, May 4, 1983, to July 7, 1987. At the highest lawful rate of 18%, the summary judgment evidence shows that the Bank could have lawfully charged up to $4,200,550.82, an amount greater than the sum of the interest and penalty actually charged.

the initial loan, and as such the penalty is susceptible to the application of the spreading doctrine and the savings clause in the Note. *Cf. Dixon v. Brooks,* 678 S.W.2d 728, 731 (Tex.App.1984, writ ref'd n.r.e.) (late charge that is (1) a one time charge, (2) for an indefinite term, (3) payable on delinquency, and (4) unaffected by length of time before late payment received is added to the interest on the principal and spread to determine if it is usurious).

■ The Venture cites *Fisher v. Westinghouse Credit Corp.,* 760 S.W.2d 802 (Tex.App.1988, no writ), in its brief and relied heavily on that case in oral argument. We find no application of the *result* in that case to the case at bar. *Fisher* itself says that, where a note is accelerated, spreading can be applied to a late charge to save a loan from being usurious. *Fisher,* 760 S.W.2d at 806. We agree with that statement of the law. However, the decision in *Fisher* against the credit company resulted from the *failure* of the credit company *to properly plead acceleration,* creating a question as to whether the penalty charged might have been interest on the late installment-interest payments. Interest on interest would not have been spreadable across the underlying principal and therefore could have been usurious. *Id.* at 806–807. No similar fact situation arises in this case.

We hold that application of the spreading doctrine and the savings clause to the prepayment penalty prevents the penalty, as charged, from being usurious.

■ The Venture's second basis for its usury claim is the effect of a "hypothetical failure" by the Venture to have qualified for even the first advance under the loan. That event would have triggered the prepayment penalty under the terms of the Note. The Venture argues that the amount of the penalty would have been considered interest on the small portion of the principal originally advanced and would have been in excess of the legal rate.

The Venture claims that the possibility of this contingency, although it never occurred, makes the Note usurious on its face and cannot be avoided by the savings clause in the Note which calls for a rebate of any amount of interest which would be usurious. That is not the law of this state. The law requires all provisions of a contract to be given full effect, and a provision that calls for the actual reduction of the interest paid, down to a legal amount, saves a contract from being usurious on its face. *See Nevels v. Harris,* 102 S.W.2d 1046, 1049 (Tex.1937).

We hold that the district court correctly granted the Bank's partial motion for summary judgment as to the usury claim. Point of error one is overruled.

### B. *Other Claims*

The Venture alleged three other causes of action against the Bank. All three causes depended on the meaning given to the no-prepayment and acceleration clauses set forth above. In separate points of error as to each remaining cause, the Venture contends that the Note is ambiguous, requiring a fact finder to determine its meaning and precluding the district court from granting summary judgment.

■ Whether a contract is ambiguous is a question of law for the court looking at the contract as a whole. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). If the contract can be given only one reasonable and certain meaning it is not ambiguous as a matter of law. *Id.* at 394. The court in construing the contract must look at the entire writing and try to harmonize all provisions so that none is rendered meaningless. *Id.; Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). This Court finds that based on the summary judgment record, the district court could infer a reasonably certain meaning from reading the contract.

■ The only reasonably certain meaning of the no-prepayment provision of the Note that will harmonize with the provisions allowing for acceleration and demand in the event of default is to construe the no-prepayment language as relating only to *voluntary prepayment,* as the Bank argues. Following the sentence, in the note, that no prepayment shall be allowed prior

to December 21, 1992, the next sentence says, "After such date the undersigned shall have the right to prepay." Further in that same clause, the notice requirements are given for the "undersigned" to be allowed to prepay. The undersigned on the Note was ACRG Joint Venture, by its partners. The Bank, as maker, was not one of the undersigned. Therefore, it is reasonable to construe the Note so that the prohibition against prepayment applies to the Venture, not the Bank. Nor does this interpretation fail to give purpose to the prepayment penalty schedule, since the penalties called for on dates prior to December 1992 would apply in the event of either default and acceleration or failure of the Venture to qualify for construction advances.

Conversely, to find all prepayment impermissible, even at the demand of the lender, would render the default and acceleration clauses meaningless. Alternatively, finding that the prepayment penalties for years prior to 1992 set forth in Exhibit "A" authorized voluntary prepayment would render the no-prepayment language meaningless. Therefore, either of the Venture's requested interpretations would fail to harmonize one of the clauses in the Note.

The Bank's suggested construction of the Note provides a clear and certain meaning and leaves no ambiguity for a trier of fact to decide. The district court could have properly construed the note as the Bank requested in its motion for summary judgment. For the purpose of determining the remaining points of error, we will use that construction.

### 1. Breach-of-Contract Claims

In its third point of error, the Venture contends that the district court erred in granting summary judgment on its breach-of-contract claims relating to the Bank's refusal to allow prepayment of the loan and to the Bank's subsequent action accelerating the loan for default. The Bank's

motion for summary judgment urged that there was no breach of contract because the terms of the Note prohibit prepayment before December 21, 1992, and allow for acceleration on default.

Under the Bank's construction of the Note's terms, which the district court could have followed, neither of the Bank's actions provide the basis for a claim for breach of contract as a matter of law. We agree. Accordingly, this point of error is overruled.

### 2. Breach-of-Duty-of-Good-Faith Claims

In its fourth point of error, the Venture contends that the district court erred in granting the Bank partial summary judgment as to the Venture's breach-of-duty-of-good-faith claim. Since that court could construe the meaning of the Note, no fact issue remained regarding the rights of the Bank, only questions of law.

There can be no breach of the duty of good faith merely by a party's acting in strict accordance with the terms of a contract. *See English v. Fisher*, 660 S.W.2d 521, 522 (Tex.1983). The Note gives the Bank the *right* to deny prepayment prior to 1992. The Venture argues that the reason given by the Bank for refusing to accept prepayment was shown to be false. However, when acting in accord with the Note as written, the reason given is irrelevant.[5]

The Bank's right to refuse prepayment is absolute under the terms of the Note; no reason was required. *See Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 483 (Tex. App.1989, writ denied) (where an act is neither required under the terms of the contract, nor grows out of those terms, no duty of good faith can be extended to the refusal to perform those acts). Therefore, the explanation given for the refusal to

---

5. The Venture's reliance on *Printing Center of Texas v. Supermind Publishing Company*, 669 S.W.2d 779 (Tex.App.1984, no writ), is misplaced. That case dealt with rejection of nonconforming goods. With non-conforming goods, the buyer's right to reject *must be based* on the non-conformity, *not* on a desire to escape the bargain. The reason for rejection must be given in good faith. *Id.* at 784. However, the rights at issue in this case are not conditional.

allow prepayment cannot form the basis for a cause of action.

■ The Venture further claims that the Bank acted dishonestly by accelerating the note after offering the Venture a chance to substitute collateral. The Bank offered uncontroverted summary judgment evidence that while the Venture was attempting to substitute collateral the loan fell further in default and acceleration was judged to be necessary. There is no controverting evidence either that the Bank waived acceleration or any other option available under the Note for default, or that the Note was not in default. No basis for any claim of dishonesty in fact arises from the Bank's enforcement of its rights under the Note. This point of error is overruled.

### 3. DTPA Claims

The Bank addressed the DTPA claims in its second motion for partial summary judgment. The grounds asserted in the motion were: 1) no issues as to any material facts existed and defendants were entitled to judgment as matter of law; 2) as a matter of law no material misrepresentation or nondisclosure regarding the terms of the Note was made as alleged in the petition; and 3) as a matter of law, the Bank did not engage in unconscionable actions as alleged in the petition. The Venture contends in its second point of error that the district court erred in granting this motion because genuine issues of material fact existed.

■ In its petition, the Venture asserts claims under four sections of the DTPA.[6] The first claim was under DTPA section 17.46(b)(5), which becomes a consumer action under section 17.50(a)(1). The Venture alleged that the Bank misrepresented the characteristics of the goods purchased by representing that they could be retained by prepayment of the debt along with a prepayment penalty at any time. Under DTPA section 17.46(b)(23), the Venture alleged failure to disclose that the apartment complex could be "taken away" despite tender of prepayment and the penalty listed on Exhibit A to the Note. Then, under DTPA section 17.46(b)(12), the Venture alleged the Bank misrepresented the rights, remedies, and obligations of the loan documents.

These claims were based on the language of the Note that is part of the summary judgment evidence. There is no evidence in the summary judgment record of separate representations as to prepayment, acceleration, or interest. These claims are resolved as a matter of law by a construction of the Note that prohibits voluntary prepayment prior to December 1992. Given that construction, the Note contained the disclosure that the apartment complex could be foreclosed in event of default despite a prior offer of prepayment. This was the non-disclosure which the Venture alleged. Where there is uncontroverted evidence that the disclosure was made, summary judgment is proper as a matter of law. The representations alleged as misrepresentations are merely assertions of the Bank's desire to stand by the terms of the Note as construed by the Bank. Enforcing rights provided for by contract does not violate DTPA section 17.46(b)(12). *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 333 (Tex.1983) (holding there was no violation of section 17.46(b)(12) when a bank foreclosed for partial default since the contract lien gave the bank that right). Therefore, the district court properly found that none of these three DTPA claims precluded granting summary judgment for the Bank.

■ The Venture's final claim under the DTPA is that the Bank acted unconscionably by taking "irrational and oppressive actions" to prevent payment of the Note, depriving the Venture of the value of

---

**6.** This Court is aware that in pure loan transactions the DTPA does not apply because a borrower of money is not considered a consumer within the DTPA definition. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174–5 (Tex. 1980). There may be a legitimate question as to whether this case involves a pure loan transaction and is therefore not covered at all by the DTPA. However, this issue was not raised in the Bank's motions for summary judgment and so cannot be considered by this Court as a basis for upholding the trial court's judgment.

its investment in the property. The Venture alleges "this" created a gross disparity in value as prohibited by DTPA Section 17.50(a)(3). We will regard "this" as referring to the acceleration and foreclosure on Venture's investment property. The Bank's actions, even if oppressive, fail to give rise to a DTPA claim.

The statement of the claim confuses the nature of the transaction between the Bank and the Venture. The Venture did not contract to buy property, materials, or an apartment complex from the Bank; rather, the Venture contracted to borrow money from the Bank using the completed project as security for the loan. The Venture received its loan of more than six million dollars from the Bank and paid interest on the use of the money while the loan was outstanding. When the Venture defaulted on the loan, the Bank foreclosed upon the security to satisfy the outstanding value of the loan, as allowed by the Note.

Hypothetically, gross disparity in this type of transaction would require evidence that the Venture was prevented from using the money borrowed despite paying the costs of borrowing, or that the Venture had sustained a similar inequity in its bargain. The evidence here is to the contrary. The Venture received the use of the money to build the apartment complex. Receipt of a return on an investment in the apartment complex was not part of the benefit contracted for between the Bank and the Venture. Therefore, the Venture's failure to receive that benefit cannot form the basis of any DTPA claim against the Bank.

 Further, the only controverting evidence of gross disparity is in the Venture's own interrogatory answers. These answers are not proper summary judgment evidence on behalf of the Venture. *See Keever v. Hall & Northway Advertising, Inc.*, 727 S.W.2d 704, 705 (Tex.App.1987, no writ).

Since there was no genuine issue of material fact as to gross disparity, and since there was no basis for this DTPA claim as a matter of law, this claim could not preclude granting of summary judgment for the Bank.

None of the DTPA claims raises any question of fact not resolved by the construction of the Note. Given the construction of the Note properly available to the district court, we hold that as a matter of law summary judgment on the DTPA claims was proper. This point of error is overruled.

### CONCLUSION

This Court holds that there were no issues of material fact which, as a matter of law, would allow the Venture to prevail on at least one essential element of each of its causes of action. We, therefore, affirm the district court's final judgment incorporating the two orders granting partial summary judgment.

POWERS, J., not participating.