In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-185 CV


____________________



TEXAS SOUTHERN UNIVERSITY, Appellant



V.



CAPE CONROE PROPERTY OWNERS ASSOCIATION, INC., Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 06-08-07804-CV






 OPINION


 The issue in this case is whether the trial court has subject matter jurisdiction to hear
Cape Conroe Property Owners Association, Inc.'s ("Cape Conroe") suit against Texas
Southern University ("TSU"). Cape Conroe sued TSU for TSU's failure to pay annual
maintenance fees as required by restrictive covenants contained in TSU's deeds to the lots;
Cape Conroe alleged a "taking" by virtue of TSU's inverse condemnation of Cape Conroe's
right to collect the fees and a foreclosure claim. TSU filed a plea to the jurisdiction to
challenge the trial court's power to hear the suit. Subsequently, the trial court denied TSU's
challenge to its subject matter jurisdiction.

 We conclude that Cape Conroe's pleadings are sufficient to establish a potential
inverse condemnation or "takings" claim arising from TSU's non-payment of annual
maintenance fees. We also conclude that TSU is not immune from Cape Conroe's
foreclosure claim, even though it may be immune from liability under Cape Conroe's
foreclosure theory. Therefore, we affirm the trial court's order denying TSU's challenge to
the trial court's subject matter jurisdiction over Cape Conroe's claims.

Background


 In August 2006, Cape Conroe filed suit against TSU. Cape Conroe's petition asserted
that during the past fifteen years of TSU's ownership of thirteen lots in the Cape Conroe
subdivision, TSU had "obstinately refused to pay the annual maintenance fees" on these lots. 
Cape Conroe sought damages in the amount of the unpaid maintenance fees, statutory
damages under section 202.004 of the Texas Property Code, and damages for TSU's "taking"
of its property interest. (1) See Tex. Prop. Code Ann. § 202.004 (Vernon 2007). 
Subsequently, TSU answered and asserted a plea to the jurisdiction, in which TSU stated it
was an entity of the State of Texas. TSU pled that absent a waiver of its sovereign immunity, 
"courts are without jurisdiction to entertain a suit" against it. TSU asserted that Cape Conroe
"failed to properly allege any waiver of TSU's immunity from suit."

 In March 2007, Cape Conroe filed its First Amended Petition. Cape Conroe alleged
that since TSU acquired the lots, it had refused to pay annual maintenance fees and requested
damages based upon TSU's non-payment. For the first time, Cape Conroe also alleged that
TSU "acquired the thirteen lots for a public purpose or public use." Cape Conroe also filed
a response to TSU's plea to the jurisdiction.

 On March 26, 2007, based on the pleadings of the parties and without an evidentiary
hearing, the trial court denied TSU's Amended Plea to the Jurisdiction. The trial court's
order recites that it considered "the plea, the response, the pleadings, and evidence on file." 
TSU appeals from the trial court's order and requests that we reverse the trial court's
judgment and dismiss Cape Conroe's suit for lack of subject matter jurisdiction. 

Jurisdiction and Governmental Immunity


 TSU asserts that Cape Conroe's pleadings are insufficient to demonstrate that TSU
waived its immunity from suit and concludes that the trial court erred in denying its plea to
the jurisdiction. TSU further contends that Cape Conroe's pleadings do not sufficiently
allege a taking under Article I, Section 17 of the Texas Constitution. See Tex. Const. art.
I, § 17. With respect to Cape Conroe's nuisance claim, TSU maintains that Cape Conroe's
pleadings are insufficient to show a taking based on an alleged nuisance. Finally, TSU
asserts that Cape Conroe cannot foreclose on the lots because they are real property owned
by a university that is a political subdivision of the State.

 A university, by statutory definition, is a governmental unit. Tex. Civ. Prac. & Rem.
Code Ann. § 101.001(3)(D) (Vernon 2005); Tex. Educ. Code Ann. §§ 106.01-.02 (Vernon
2002). The doctrine of sovereign immunity extends to universities such as TSU. See Fed.
Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997) superseded by statute on other
grounds as noted in Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591,
593 (Tex. 2001); see also Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex.
2003). 

 By statute, a governmental unit has the right to an interlocutory appeal of a trial
court's decision to deny a governmental unit's plea to the jurisdiction. Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2007). Thus, we have jurisdiction over
TSU's interlocutory appeal. 

 A party's plea to the jurisdiction challenges the trial court's subject matter jurisdiction
over the dispute. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26
(Tex. 2004); Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). 
Unless the entity consents to suit, sovereign immunity from suit deprives a trial court of
subject matter jurisdiction. Miranda, 133 S.W.3d at 224; Jones, 8 S.W.3d at 638. "A party
may establish consent by statute or legislative resolution." Travis County v. Pelzel & Assocs.,
Inc., 77 S.W.3d 246, 248 (Tex. 2002), superseded by statute on other grounds. The court
may also look to the Texas Constitution to provide the basis of its authority to adjudicate the
dispute. Miranda, 133 S.W.3d at 226 (citing Austin & N.W.R. Co. v. Cluck, 97 Tex. 172, 77
S.W. 403, 405 (1903)). 

 The Texas Supreme Court recognizes a distinction between immunity from suit, which
bars legal action against the State, and immunity from liability, which protects the State from
judgments. Miranda, 133 S.W.3d at 224; Jones, 8 S.W.3d at 638. Following Federal Sign,
the Texas Supreme Court explained the distinction as follows: 

 Immunity from liability and immunity from suit are two
distinct principles. Immunity from liability protects the state
from judgment even if the Legislature has expressly consented
to the suit. Like other affirmative defenses to liability, it must be
pleaded or else it is waived. Immunity from liability does not
affect a court's jurisdiction to hear a case. 


 In contrast, immunity from suit bars an action against the
state unless the state expressly consents to the suit. The party
suing the governmental entity must establish the state's consent,
which may be alleged either by reference to a statute or to
express legislative permission. Since as early as 1847, the law
in Texas has been that absent the state's consent to suit, a trial
court lacks subject matter jurisdiction.


Jones, 8 S.W.3d at 638 (citations omitted). 

 In the case before us, the trial court denied TSU's plea without conducting an
evidentiary hearing. Both TSU's plea and its issues on appeal question whether Cape Conroe
pled sufficient facts to demonstrate that the trial court had subject matter jurisdiction over
the dispute. TSU also contends that the Texas Property Code prohibits a judgment that
would allow Cape Conroe to foreclose on its property.

 We review a trial court's ruling on a plea to the jurisdiction under a de novo standard
of review. Miranda, 133 S.W.3d at 226. We liberally construe the plaintiff's pleadings in
its favor, and we look to the pleader's intent. Id.; County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002). If the pleadings do not contain sufficient facts to affirmatively
demonstrate the trial court's subject matter jurisdiction over the dispute, but the deficiency
appears curable, "the issue is one of pleading sufficiency and the plaintiffs should be
afforded the opportunity to amend." Miranda, 133 S.W.3d at 226-27 (citing Brown, 80
S.W.3d at 555). On the other hand, if the pleadings affirmatively negate the existence of
subject matter jurisdiction, "then a plea to the jurisdiction may be granted without allowing
the plaintiffs an opportunity to amend." Id. at 227. 

Discussion


 TSU asserts that unless waived, sovereign immunity shields it from a suit seeking
monetary damages. TSU then argues that Cape Conroe's pleadings fail for several reasons
to affirmatively demonstrate that the trial court possessed subject matter jurisdiction over the
dispute. 

 First, TSU argues that Cape Conroe's allegation that TSU has "obstinately refused to
pay the annual maintenance fees" is inadequate to plead an intentional taking. TSU argues
that Cape Conroe's pleadings do not allege that TSU knew that its acts would cause an
identifiable harm, or that TSU knew that specific property damages were substantially certain
to result from its acts. As authority for this argument, TSU relies on City of Dallas v.
Jennings, and that court's statement that it did not "agree with the plaintiffs' contention that
any intentional act can give rise to liability for an intentional taking." 142 S.W.3d 310, 313
(Tex. 2004). 

 However, Jennings is a summary judgment case in which both parties moved for
summary judgment; the Texas Supreme Court did not address the detail with which a party
is required to plead a takings claim under the Texas Constitution. Id. at 312. In Jennings,
the trial court granted the City's motion for summary judgment and denied the landowners'
motion. Id. The landowners then appealed. Id. While the opinion is relevant to the
government's intent, which the appellant must prove to establish a takings claim under
Article I, Section 17 of the Texas Constitution, the opinion is silent with respect to the details
the plaintiff's petition must allege regarding intent to survive a challenge presented by a plea
to the jurisdiction. Id. at 313-15. In Jennings, the Supreme Court held that "there was no
evidence that the City possessed the knowledge required to establish an intentional taking 
. . . . " Id. at 315. As a result, the Jennings Court concluded that the trial court correctly
granted the City's motion for summary judgment. Id.

 The issue before us concerns the sufficiency of Cape Conroe's pleadings, not the
ultimate merits of whether TSU possessed the requisite intent to require it to compensate the
property owner for the alleged taking. While Jennings controls the quantum of proof
required to support a takings claim, it does not control the degree of detail with which a party
must plead a takings claim to put the government on fair notice. See id. at 313-15.

 Our review of Cape Conroe's pleadings reveals that Cape Conroe notified TSU of its
claim that TSU "obstinately" refused to pay the annual maintenance fees after it acquired the
lots. Webster's Dictionary defines "obstinate" as "pertinaciously adhering to an opinion,
purpose, or course : not yielding to reason, arguments, or other means[.]" Webster's Third
New International Dictionary 1559 (2002). Cape Conroe alleged that TSU "acquired
the thirteen lots for a public purpose or public use," that TSU had been notified of the
delinquency, and that TSU "stated it will not pay it." Additionally, Cape Conroe specifically
alleged that TSU violated Article I, Section 17 of the Texas Constitution, and that despite
taking the property, TSU "failed to hold formal condemnation proceedings for the purpose
of compensating Cape Conroe [ ] for taking its property interest for public use." In Cape
Conroe's response to TSU's plea to the jurisdiction, Cape Conroe alleged that the Texas
Education Code provisions governing TSU allowed it to "only acquire property for a public
purpose." See Tex. Educ. Code Ann. § 106.35 (Vernon 2002). 

 With respect to the specificity required to properly plead claims, the Rules of Civil
Procedure require only "a short statement of the cause of action sufficient to give fair notice
of the claim involved." Tex. R. Civ. P. 47(a). In our opinion, Cape Conroe's pleadings are
sufficient to put TSU on notice that Cape Conroe sought to hold TSU liable for the "taking"
of Cape Conroe's entitlement to annual maintenance fees as prohibited by Article I, Section
17 of the Texas Constitution. Article I, Section 17 of the Texas Constitution provides:

 No person's property shall be taken, damaged or destroyed for
or applied to public use without adequate compensation being
made, unless by the consent of such person; and, when taken,
except for the use of the State, such compensation shall be first
made, or secured by a deposit of money . . . .


Tex. Const. art. I, § 17. A court's subject matter jurisdiction of takings claims is based upon
Article I, Section 17. (2) Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980) ("The
Constitution itself . . . is a waiver of governmental immunity for the taking, damaging or
destruction of property for public use."). We conclude that Cape Conroe's pleadings are
sufficient to demonstrate a claim founded on the waiver provided by the Texas Constitution. 
See Tex. Const. art. I, § 17. We also find Cape Conroe's pleadings sufficient with respect
to its allegations of TSU's intent to take Cape Conroe's property. 

 Additionally, TSU argues that its refusal to comply with the terms of the deed
restrictions cannot constitute a taking. TSU asserts that it never owed the annual
maintenance fees that Cape Conroe seeks to collect because property restrictions cannot be
enforced against the State. To support its argument, TSU relies on Wynne v. City of Houston,
115 Tex. 255, 281 S.W. 544, 544 (Tex. 1926), and Deep East Texas Regional Mental Health
and Mental Retardation Services v. Kinnear, 877 S.W.2d 550, 561 (Tex. App.-Beaumont
1994, no writ), rev'd in part by Kinnear v. Tex. Commission on Human Rights, 14 S.W.3d
299 (Tex. 2000). 

 However, Wynne and Kinnear do not stand for the proposition that a governmental
entity can take property for public use without payment. In Wynne, the Texas Supreme Court
held that "no valid contract could be made which would restrict the right on the part of the
municipal authorities to exercise the police power of constructing and maintaining fire
stations . . . ." Wynne, 281 S.W. at 544. As a result, the Supreme Court upheld the court of
appeals' ruling dissolving an injunction against the City of Houston. Id. Wynne does not
hold that a restrictive covenant that burdens property with assessments by a property owners
association cannot form the basis of a takings claim, nor does it discuss whether the parties
could have attempted to pursue claims for damages because of the City's decision to build
a fire station in a restricted residential neighborhood. See id. In Wynne, the Texas Supreme
Court prevented a trial court from enjoining the construction of a fire station, but it did not
address a takings claim or indicate that a takings claim was asserted. See id. Thus, Wynne
does not support TSU's argument that it is immune from a takings claim. 

 In Kinnear, this Court discussed whether a deed restriction allowed a trial court to
enjoin a governmental agency from building a community home for people with mental
impairments. Kinnear, 877 S.W.2d at 553-54. In overturning the trial court's injunction that
prevented the home's construction, this Court stated that restrictive covenants "must yield
to the exercise of the state's legitimate police power." Id. at 560. Kinnear does not address
whether the government would be required to pay damages caused to property owners as a
result of the home's construction in a restricted neighborhood. Kinnear does not stand for
the proposition that a deed restriction cannot become the basis of takings claims. 

 Generally, the government's power to take property for public use extends to a broad
range of property rights and interests. See Houston N. Shore Ry. Co. v. Tyrrell, 128 Tex. 248,
98 S.W.2d 786, 793 (1936). With respect to a similar fee created by restrictive deed
covenants, the First Court of Appeals concluded that the governmental taking of property
burdened with such restrictive covenants, when taken for public use, allowed a property
owners association to recover damages. Harris County Flood Control Dist. v. Glenbrook
Patiohome Owners Ass'n, 933 S.W.2d 570, 577-78 (Tex. App.-Houston [1st Dist.] 1996,
writ denied). We likewise conclude that Cape Conroe's pleadings, when construed in its
favor and taken as true, are sufficient to establish a potential takings claim.

 Next, TSU contends that to establish a takings claim under the Texas Constitution,
Cape Conroe must identify TSU's public use of the monies it gained by not paying the
maintenance fees. TSU also points out that in one paragraph of Cape Conroe's pleadings,
Cape Conroe alleged that the thirteen lots "were not acquired and have never been used for
any public purpose[,]" but that later, in another paragraph, Cape Conroe stated that "[TSU]
acquired the thirteen lots for a public purpose or public use." TSU argues that Cape
Conroe's pleadings are inconsistent and must, nevertheless, identify a public use to
demonstrate a viable takings claim under the Texas Constitution. 

 Although Cape Conroe's pleadings are inconsistent regarding TSU's use of the lots,
the Texas Rules of Civil Procedure allow a party to plead inconsistent theories. Rule 48 of
the Texas Rules of Civil Procedure provides, in pertinent part: "A party may also state as
many separate claims or defenses as he has regardless of consistency and whether based upon
legal or equitable grounds or both." Tex. R. Civ. P. 48. Further, as previously stated, with
respect to a challenge raised by a plea to the jurisdiction, we must "construe the pleadings
liberally, looking to the pleader's intent." State v. Holland, 221 S.W.3d 639, 643 (Tex.
2007). 

 Nonetheless, Cape Conroe identified a general public use in its response to TSU's plea
to the jurisdiction, alleging: "The statute which created TSU shows that TSU is created for
a public purpose and can only acquire property for a public purpose." Additionally, as noted
above, Cape Conroe specifically pled that TSU could have acquired the lots only for a public
purpose pursuant to section 106.35 of the Texas Education Code, which authorizes TSU to
"acquire by purchase, exchange, or otherwise any tract or parcel of land or other real property
necessary or convenient for carrying out the purposes of state-supported institutions of higher
education . . . ." Tex. Educ. Code Ann. § 106.35(a). 

 While Cape Conroe's pleadings do not contain allegations that detail the exact manner
TSU intended to use the lots, Cape Conroe's pleadings are sufficient to put TSU on notice
of Cape Conroe's claim that TSU took the lots to carry out the purposes of state-supported
institutions of higher education. A pleading that alleges that the government is using
property to support the purposes of higher education is sufficient to permit a court to
determine its jurisdiction over the claim. Thus, we conclude that with respect to the alleged
public use for which the property was taken, Cape Conroe's pleadings are sufficient to
overcome TSU's plea to the jurisdiction. 

 Cape Conroe also alleged a nuisance claim, and asserted that TSU had at numerous
times refused to mow severely overgrown grass and weeds on the property. TSU contends
that framing a claim as a nuisance claim does not relieve Cape Conroe's burden of showing
that TSU intentionally took the property for a public use. However, as already discussed, the
issue before us is the sufficiency of Cape Conroe's pleadings; the issue is not the quantum
of evidence required to support Cape Conroe's allegations. A nuisance claim, under the
proper circumstances, can serve as an alternate theory for a taking recognized under Article
I, Section 17 of the Texas Constitution. See City of Abilene v. Downs, 367 S.W.2d 153, 159
(Tex. 1963). Thus, regardless of the variant theory of "taking," we conclude that Cape
Conroe's pleadings are sufficient to allege a takings claim under the Texas Constitution for
jurisdictional purposes. 

 TSU advances no additional arguments regarding the adequacy of Cape Conroe's
pleading of its nuisance claim. We express no opinion regarding the merits of Cape Conroe's
nuisance theory, or whether its pleadings might be inadequate in ways not argued by TSU. 
Generally, appellate courts do not reverse on unassigned error. See Tex. R. App. P. 38.1(e); 
Pat Baker Co., Inc. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998); Walling v. Metcalfe, 863
S.W.2d 56, 58 (Tex. 1993). However, at some point, even if not raised by the parties, the
court will address the issue of a court's subject matter jurisdiction over Cape Conroe's
nuisance claim. See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser, 140 S.W.3d 351,
358 (Tex. 2004), superseded by statute on other grounds. Thus, although we are not
persuaded by TSU's argument, the trial court or an appellate court may address other
arguments pertinent to Cape Conroe's nuisance claim on a more fully developed record in
subsequent proceedings. See Loutzenhiser, 140 S.W.3d at 358.

 In summary, having reviewed TSU's arguments under its first issue, we conclude that
Cape Conroe's pleadings are sufficient to establish a potential takings claim under the Texas
Constitution. See Tex. Const. art. I, § 17. As a result, the trial court did not err in denying
TSU's plea to the jurisdiction. TSU's first issue is overruled.

 In its second issue, TSU contends that the trial court erred in denying its plea to the
jurisdiction with respect to Cape Conroe's foreclosure claim. TSU argues that a foreclosure
claim cannot be maintained because it is disallowed by section 43.002 of the Texas Property
Code, which provides: 

 The real property of the state, including the real property held in the name of
state agencies and funds, and the real property of a political subdivision of the
state are exempt from attachment, execution, and forced sale. A judgment lien
or abstract of judgment may not be filed or perfected against the state, a unit
of state government, or a political subdivision of the state on property owned
by the state, a unit of state government, or a political subdivision of the state;
any such judgment lien or abstract of judgment is void and unenforceable.


Tex. Prop. Code Ann. § 43.002 (Vernon 2000). 

 Although this provision of the Texas Property Code invalidates a lien and voids a
judgment, its terms do not divest the trial court of jurisdiction over the creditor's claims. 
While the State's property may be exempt from execution on a claim, the statute does not
make the State immune from suit. Jones, 8 S.W.3d at 638. This provision of the Property
Code, relied upon by TSU, does not create immunity from a takings claim even if it voids 
judgments imposing a remedy of foreclosing on State-owned property. 

 We conclude that section 43.002 of the Texas Property Code is a defense to
foreclosure, but does not divest the courts of jurisdiction to hear a takings claim. See Tex.
Prop. Code Ann. § 43.002. Therefore, we overrule TSU's second issue. Having overruled
TSU's issues, the trial court's order denying TSU's plea to the jurisdiction is affirmed.

 AFFIRMED.


 ______________________________

 HOLLIS HORTON

 Justice

Submitted on October 11, 2007

Opinion Delivered January 24, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. A "taking" can occur when the interference is temporary or permanent. City of
Austin v. Ave. Corp., 704 S.W.2d 11, 13 (Tex. 1986). Cape Conroe's pleadings do not
identify whether TSU's interference with its property right is allegedly temporary or
permanent. 
2. We do not imply that a governmental entity can take property without compensation
for a private use. Although not specifically prohibited by the Texas Constitution, the due
process clause of the Fourteenth Amendment to the Constitution of the United States limits
government takings of property for private use. See Davis v. City of Lubbock, 160 Tex. 38,
326 S.W.2d 699, 703 (1959); Dallas Cotton Mills v. Indus. Co., 296 S.W. 503, 505 (Tex.
Com. App. 1927, judgm't adopted). However, Cape Conroe's pleadings do not allege that
TSU took the lots for a private use, or that after the lots were acquired, they were applied to
a private use.