In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-585 CV


____________________



IN THE ESTATE OF BERTHA COSTELLO






On Appeal from the County Court at Law


Liberty County, Texas


Trial Cause No. 10,872






 MEMORANDUM OPINION


 The Estate of Bertha Costello ("the Estate") contends the trial court erred by finding
that the Estate owed a debt to Lillian Meineke ("Meineke"). Alternatively, the Estate argues
the trial court erred in its calculation of the debt's remaining balance. We affirm in part and
reverse and render in part.

Background

 On December 7, 2001, Meineke sold a house to Bertha Costello ("Costello") and
Michael Helnboldt. (1) Meineke financed the sale, as is evident by her status as beneficiary of
a deed of trust and as lender on a promissory note. While no one recorded the deed, the deed
of trust was filed in the real property records of Liberty County. Subsequently, Costello paid
Meineke until September 24, 2005, when a tree fell on the house during Hurricane Rita. 
Unfortunately, Costello was home at the time and died from the accident; after Costello's
death, payments on the home stopped. When she died, Costello was not delinquent on her
payments. As required by the deed of trust, the home was insured at the time of the casualty. 
 To collect the remaining debt under the note, Meineke, as a creditor to the Estate, 
requested that the probate court appoint her as the representative of Costello's Estate. 
Rhonda Wilson, Costello's daughter, answered, denied the validity of the debt, and requested
that she be appointed representative of her mother's estate. The insurance carrier, with
Meineke's and Wilson's approval, paid the insurance proceeds in the amount of $40,000 into
the court's registry. The court appointed Wilson as the Estate's administratrix and proceeded
to trial on the issue regarding the debt's validity. 

 Following a bench trial, the trial court concluded that Meineke conveyed the property
to Costello, thereby, creating a valid debt; found the Estate indebted to Meineke in the
amount of $26,785; and awarded Meineke attorney's fees in the amount of $4,371.50. The
trial court awarded the balance of the proceeds held in the court's registry, in the amount of
$8,843.50, to the Estate. The trial court then awarded the interest earned while the funds
were in the court's registry to Meineke, the Estate, and the Liberty County Clerk. (2) 

 The trial court also entered findings of fact and conclusions of law. The Estate
subsequently filed a motion for new trial, which was overruled by operation of law. In issues
one through ten, the Estate challenges whether sufficient evidence supports the trial court's
findings. In issues eleven and twelve, the Estate argues that the trial court miscalculated the
amount owed by the Estate.

Standard of Review


 In an appeal from a bench trial, the trial court's findings of fact "have the same force
and dignity as a jury's verdict upon questions." Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991). When the trial court's findings of fact are challenged, we
review the sufficiency of the evidence supporting the findings by applying the same
standards that we use in reviewing the legal or factual sufficiency of the evidence supporting
jury findings. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002);
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994). When the trial court's findings are incomplete on all elements of a ground of
recovery, and the trial court's findings include one or more elements favoring the ground of
recovery, omitted unrequested elements that are supported by the evidence are supplied in
support of the trial court's judgment. Tex. R. Civ. P. 299. We review de novo a trial court's
conclusions of law, and we will uphold them if the judgment can be sustained on any legal
theory supported by the evidence. BMC Software, 83 S.W.3d at 794.

 Evidence is legally sufficient if it "would enable reasonable and fair-minded people
to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). In evaluating the evidence's legal sufficiency, "we credit evidence that supports the
verdict if reasonable [factfinders] could, and disregard contrary evidence unless reasonable
[factfinders] could not." Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 (Tex.
2006) (citing City of Keller, 168 S.W.3d at 827). In a factual sufficiency review, we consider
all of the evidence and uphold the finding unless the evidence is too weak to support it or the
finding is so against the overwhelming weight of the evidence as to be manifestly unjust. 
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). The trial court, as factfinder,
determines the credibility of the witnesses and the weight to be given their testimony. See
Woods v. Woods, 193 S.W.3d 720, 726 (Tex. App.-Beaumont 2006, pet. denied); see also
City of Keller, 168 S.W.3d at 819.


Analysis
 

 Conveyance of the Property 

 In its brief, the Estate does not separately argue each issue; rather, the Estate
consolidates its argument for issues one through ten under one heading titled "Delivery of
Deed." Consequently, we do not separately address each of the Estate's issues and instead,
respond to the central argument made by the Estate that there is no evidence, or insufficient
evidence, to show that Meineke delivered a deed transferring the property to Costello. In
support of its argument, the Estate argues that Costello's payments evidence rental payments,
not a purchase. The Estate maintains that absent a physical delivery of the deed to Costello,
the promissory note lacked consideration.

 Generally, a conveyance of real property must be in writing, signed by the grantor, and
delivered to the grantee. See Tex. Prop. Code Ann. § 5.021 (Vernon 2004). A deed does
not have to be recorded to convey title. Thornton v. Rains, 157 Tex. 65, 299 S.W.2d 287,
288 (1957); Burris v. McDougald, 832 S.W.2d 707, 709 (Tex. App.-Corpus Christi 1992,
no writ). A conveyance is effective and title is transferred after the execution and delivery
of the deed. Stephens County Museum, Inc. v. Swenson, 517 S.W.2d 257, 261 (Tex. 1974);
Rothrock v. Rothrock, 104 S.W.3d 135, 138 (Tex. App.-Waco 2003, pet. denied); Hicks v.
Loveless, 714 S.W.2d 30, 32 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). Two elements must
be established to prove delivery of a deed: (1) the grantor must relinquish control over the
deed to the grantee or a third party, and (2) the grantor must intend the deed to become
operative as a conveyance. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, 475 (1945);
see also Ragland v. Kelner, 148 Tex. 132, 221 S.W.2d 357, 359 (1949); Vasquez v. Vasquez,
973 S.W.2d 330, 331 (Tex. App.-Corpus Christi 1998, pet. denied); Hicks, 714 S.W.2d at
32. As the Ragland Court stated: 

 A valid delivery of a deed may be made to a third person who is
not an agent of the [grantee], and this is true even though the
grantee may not be aware of its execution or delivery. 


 . . . The test . . . is whether or not the grantor parted with all
dominion and control over the instrument at the time he
delivered it to the third person, with intent at the very time of its
delivery that it take effect as a conveyance. 


Ragland, 221 S.W.2d at 359. Delivery also requires the grantee to accept the deed. See
Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209, 211 (1947).

 Although the recording of a deed creates a prima facie presumption of delivery and
acceptance, the fact that a deed has not been recorded is not controlling. Swenson, 517
S.W.2d at 261-62; Raymond v. Aquarius Condo. Owners Ass'n, Inc., 662 S.W.2d 82, 91
(Tex. App.-Corpus Christi 1983, no writ). Additionally, delivery does not necessarily
require manual physical transfer of the deed to the grantee or a third party or even that the
deed be placed beyond the grantor's physical possession. See Hart v. Rogers, 527 S.W.2d
230, 234 (Tex. Civ. App.-Eastland 1975, writ ref'd n.r.e.); Gilbert v. McSpadden, 91 S.W.2d
889, 890 (Tex. Civ. App.-Waco 1936, writ ref'd). No particular form or words of action are
required to constitute delivery, and because delivery turns on the grantor's intent, it is
determined "by examining all the facts and circumstances preceding, attending and following
the execution of the instrument." Swenson, 517 S.W.2d at 262; see also Thornton, 299
S.W.2d at 288; Rothrock, 104 S.W.3d at 138. "While the question of whether there has in
fact been a delivery of a deed is one for the trier of facts, the question of what constitutes a
delivery is one of law." Ragland, 221 S.W.2d at 359; see also Rothrock, 104 S.W.3d at 138. 
 In this case, the parties did not introduce the deed into evidence. However, the
evidence reflects that Costello signed both the deed of trust and the promissory note. Both
of these documents refer to a deed executed by Meineke to Costello, dated December 7,
2001, the same date the deed of trust and promissory note were executed. Jean Wunsch,
Meineke's daughter, testified that she was present when the documents, which included the
deed, were signed. According to Wunsch, she expected the attorney who prepared the
documents to also have them recorded. 

 The trial court found that Meineke delivered the deed. (3) Although the trial court did
not make specific findings on whether the deed was in writing and signed by Meineke, the
Estate did not request additional findings on those elements of this ground of Meineke's
theory of recovery after the trial court filed its findings of fact. See generally Tex. R. Civ.
P. 298. Nevertheless, as here, when a trial court makes a finding on one element of a ground
of recovery and there is evidence in the record to support the other elements, we imply the
other necessary elements. See Tex. R. Civ. P. 299. Because the trial court found Meineke
delivered the deed, we imply that the deed was in writing and signed by Meineke. 

 Wunsch also testified that she had handled the receipt of Costello's payments over the
course of several years. Wunsch stated that she lived approximately two hundred yards from
Costello, and that she took Costello's payments and made sure her mother got them. Wunsch
retained copies of the receipts for Costello's payments, authenticated the copies of receipts,
and the trial court admitted them into evidence without objection. Before Costello bought
the house, the receipts designated that the payments were "For Rent." After the documents
were signed, the receipts recited that the payments were for "payment on house." According
to Wunsch, after Costello's death she considered that the property "still belonged to
[Costello]."

 Two of Costello's daughters, Rhonda Wilson and Rochelle Day, also testified at the
trial. Although both Wilson and Day testified that they were prohibited from entering the
property after their mother's death, neither of them stated that they were locked out of the
premises. Wilson and Wunsch discussed payment of the debt. In response, Wilson
suggested that she "could take out a second mortgage on [her] home and pay for the house." 
Additionally, Wilson prepared a check in the amount of fifty dollars on which she wrote
"payment of mom's prop[erty]." The Estate introduced the $50.00 check into evidence, and
the testimony also reflects that the check was never delivered to Wunsch. Wilson also
acknowledged a discussion prior to Costello's death when she understood that Wunsch was
to re-do the note or deed "for my mom only[.]" Day, Costello's oldest daughter, testified that
after Costello died, her family had discussions about what they were going to do with the
property, "but by no means did we not want to give [Wunsch] her money." Wilson's and
Day's testimonies also supports the trial court's conclusion that Meineke sold the property
to Costello.

 Other evidence also supports the trial court's conclusion that Meineke conveyed the
property to Costello. The evidence included a deed of trust and promissory note, both of
which were executed by Costello. The deed of trust was recorded. Moreover, Wunsch
recalls witnessing the execution of the deed at the time the other documents were executed
and leaving them with the attorney who prepared them to have them recorded. Finally, the
evidence showed that Costello made payments under the terms of the home's sale from the
date the property was sold until her death. Because the fact finder apparently considered all
of this evidence credible, it is sufficient to prove delivery. See Ragland, 221 S.W.2d at 359. 

 After considering all of the evidence admitted at trial, we find the evidence legally and
factually sufficient to support the trial court's determination that Meineke conveyed the
property to Costello, thus, creating a valid debt. See Swenson, 517 S.W.2d at 262. We
overrule the Estate's issues one through ten. 

 Calculation of Debt Owed

 In issues eleven and twelve, the Estate argues that the trial court miscalculated the
remaining amount on the debt. The Estate claims that the proper interpretation of the
promissory note dictates a different calculation.

 As a promissory note is nothing more than a contract evidencing an obligation to pay
money, courts interpret the terms of notes under the same rules as used to interpret contracts. 
See Affiliated Capital Corp. v. Commercial Fed. Bank, 834 S.W.2d 521, 526 (Tex.
App.-Austin 1992, no writ); Amarillo Nat'l Bank v. Dilday, 693 S.W.2d 38, 41 (Tex.
App.-Amarillo 1985, no writ). Under the rules of contract construction, the court's first
priority is to determine the intent of the parties as expressed in the instrument. J. M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Nat'l Union Fire Ins. Co. of
Pittsburgh, PA v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). When determining the
parties' intentions, courts should consider the entire writing in order to give effect to all
provisions of the contract and prevent any provision from being rendered meaningless. 
Coker v. Coker, 650 S.W.2d. 391, 393 (Tex. 1983); Affiliated Capital Corp., 834 S.W.2d at
526. All the provisions must be considered with reference to the whole instrument, and no
single provision, by itself, will be given controlling effect. Coker, 650 S.W.2d at 393. A
written instrument is not ambiguous and will be construed as a matter of law if the instrument
is so worded that it can be given a certain or definite legal meaning or interpretation. Id.;
Affiliated Capital Corp., 834 S.W.2d at 526. 

 The Estate asserts that the note is unambiguous as a matter of law. See Lopez v.
Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000). Specifically, the Estate
argues that the "method and manner of payment" is clear under the "Terms of Payment"
section of the note, which calls for 108 payments, 107 payments at $400.00 and one payment
at $100.00. According to the Estate, the sum of the total payments on the note equals
$42,900.00. This amount consists of the stated principal of $39,000.00, plus interest on the
principal at the rate of ten percent in the amount of $3,900.00. The Estate contends that
under the terms of the note, each payment included a payment of $36.11 in interest. (4) The
note's other provisions addressing prepayments direct that interest ceases to be due when
prepayments are made. These provisions support the Estate's theory that a portion of each
payment went to interest while the rest reduced the principal amount due. 

 Meineke, in contrast, contends that the interest is based on the total purchase price of
the home, which was $40,000.00. According to Wunsch, Costello agreed to pay $1,000.00
down and finance the remaining $39,000.00, but under the terms of the note, agreed that the
interest was to be calculated on the entire purchase price. According to Meineke, the Estate
was obligated to pay $4,000.00 ($40,000 x 10%) in interest, to be paid up front. Meineke,
however, does not direct us to any provision of the note that supports this interpretation. 
Wunsch testified that per Meineke and Costello's agreement, Costello's payments were first
applied to pay the interest; then, all of her remaining payments were applied to the reduction
of the principal amount. The receipts that Wunsch maintained of Costello's payments are
somewhat consistent with Wunsch's testimony concerning her understanding of the note's
terms.

 Because we must give effect to all of the note's terms, however, the meaning that
Meineke advocates as evidenced by the receipts is not controlling. We find that the note is
not ambiguous and can be interpreted as a matter of law, and agree with the Estate's
interpretation of the note's payment terms. See Coker, 650 S.W.2d at 393. Utilizing
Meineke's calculation would render the note's "Terms of Payment" meaningless because her
calculation would result in Costello's paying more than the "Terms of Payment" require her
to pay. See Id. Meineke's interpretation is not reasonable. See Lopez, 22 S.W.3d at 861.
Moreover, Meineke cites no authority to support her contention that the provision stating,
"Payments will be applied first to interest and the remainder to reduction of the Principal
Amount" dictates the front-loading of interest during the life of the loan.

 Based on the evidence in the record, we have sufficient information to reform the
award with respect to the note's unpaid balance. See Tex. R. App. P. 43.2(c), 43.3 The
uncontradicted evidence from Wunsch reflects that Costello was not delinquent on her
payments at the time of death. Thus, because Costello's payments were current, she would
have made 45 payments before her death. (5) As a result, at the time of Costello's death, she
owed $22,624.95 on the note. (6) Therefore, we sustain the Estate's last two issues, reverse the
portion of the trial court's judgment awarding Meineke $26,785.00, and render judgment to
reflect an award in the amount of $22,624.95 to Meineke for the Estate's remaining
indebtedness. See Tex. R. App. P. 43.2(c), 43.3. 

 Attorney's Fees

 The Estate argues that should the note be reformed, it should benefit from an equitable
reduction in the amount of attorney's fees. However, "[n]ot every appellate adjustment to
the damages which a jury considered as 'results obtained' when making attorney's fees
findings will require reversal." Barker v. Eckman, 213 S.W.3d 306, 314 (Tex. 2006). While
the attorney's fee award in this case was made by a judge rather than a jury, the award was
based on an affidavit in which Meineke's attorney itemized his time. Moreover, nothing in
the record indicates that the attorney's work in the trial court would have decreased had
Meineke argued for the construction of the promissory note that we adopt. Finally, the Estate
does not challenge the sufficiency of the evidence to support the amount the trial court
awarded as attorney's fees; instead, the Estate asserts that ten percent of a reduced award
would be a reasonable fee. 

 We are not persuaded by the Estate's contention that we should adopt a percentage
approach to establishing the amount of a reasonable attorney fee. See generally Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818-19 (Tex. 1997) (holding that
in a DTPA case, an award of attorney's fees must be expressed in a specific dollar amount
rather than a percentage of the judgment to insure that the amount of fees awarded is both
reasonable and necessary to the prosecution of the case). On the record before us, and
because the amount of the award based on the attorney's itemization of his time is not
challenged, we conclude that no meaningful difference exists in the work reasonably required
for the result achieved. Accordingly, we affirm the trial court's award of attorney's fees in
the amount of $4,371.50. See Tex. R. App. P. 38.1(e).



Conclusion

 We find the evidence sufficient to show that Meineke sold and conveyed the property
to the Estate, thus, establishing a valid debt. We also conclude that the promissory note was
not ambiguous and can be interpreted as a matter of law. We further find that $22,624.95 is
the proper calculation of the remaining balance on the note; we find the trial court erred by
awarding $26,785.00, as the remaining balance on the note. Therefore, we affirm the trial
court's finding that the Estate owed the balance of the note, and render judgment to award
Meineke $22,624.95. As the judgment also awarded the balance of the funds in the court's
registry to Costello, and that number is also in error, we reform the judgment and award the
Estate of Bertha Costello $13,003.55. In all other respects, the judgment of the trial court
is affirmed.

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

 


 ____________________________

 HOLLIS HORTON

 Justice


Submitted on June 26, 2008

Opinion Delivered November 26, 2008

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Michael Helnboldt was not a party to the proceedings in the court below and is not
a party to this appeal. 
2. On appeal, no party challenges the trial court's division of the interest earned on the
funds; therefore, we do not address the trial court's division. See Tex. R. App. P. 38.1(e);
Tex. S. Univ. v. Cape Conroe Prop. Owners Ass'n, 245 S.W.3d 626, 634 (Tex.
App.-Beaumont 2008, no pet.) ("Generally, appellate courts do not reverse on unassigned
error.") (citing Pat Baker Co., Inc. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998); Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993)).
3. "
Although this finding appears among the conclusions of law, the designation is not
controlling and we may treat it as a finding of fact." Ray v. Farmers' State Bank of Hart,
Tex., 576 S.W.2d 607, 608 n.1 (Tex. 1979) (citing McAshan v. Cavitt, 149 Tex. 147, 229
S.W.2d 1016, 1020 (1950)).


 
4. A provision in the note states that the "Principal Amount and interest are due and
payable in 108 monthly payments." Thus, the interest payments, if spread equally throughout
the term of the note, would result in 107 payments being comprised of $363.89 in principal
and $36.11 in interest and one payment of $63.89 in principal and $36.11 in interest. 
5. Costello made a prepayment of $400.00 in December, 2001. To be current at the
time of her death, Costello would have had to make additional payments equal to $400.00
per month for each month in years 2002, 2003, and 2004, and also would have had to make
payments for eight months of 2005.
6. $39,000.00 - [($400.00-$36.11) x 45] = $22,624.95